**Roberto NAVARRO AYALA, et al., Plaintiffs,**

v.

**Rafael HERNANDEZ COLON, et al., Defendants.**

**Civ. No. 74–1301 HL.**

United States District Court, D. Puerto Rico.

July 8, 1991.

---

Armando Cardona Acaba, Río Piedras, P.R., for plaintiffs.

Alice Net Carlo, Hato Rey, P.R., for Dr. José Nuñez López.

Pedro A. del Valle Ferrer, Dept. of Justice, Federal Litigation Div., San Juan, P.R., for defendants.

## OPINION AND ORDER

LAFFITTE, District Judge.

Plaintiffs, Río Piedras Psychiatric Hospital (RPPH) patients, transferred to the Guerrero Therapeutic Community (Guerrero) have requested that the Court impose sanctions on defendants, and specifically on the Assistant Secretary of Mental Health, Dr. José Nuñez López, pursuant to Rule 11 of the Federal Rules of Civil Procedure. The Court ordered the Assistant Secretary to show cause why he should not be sanctioned and also to show cause why he should not be admonished for failure to take timely action to comply with the Court's Order related to interdisciplinary evaluations. After considering both the testimony of the Assistant Secretary at the show cause hearing on June 17, 1991, and the relevant evidence in the record, the Court grants plaintiffs' motion for the imposition of sanctions.

## I. BACKGROUND

The instant sanctions motion adds another chapter to the history of this prolonged and contentious litigation. On December 3, 1990, the Special Master submitted his *Fifteenth Report* on the deinstitutionalization of the patients of RPPH. In a passing reference to those patients that had been transferred to Guerrero, the Special Master noted that certain Court ordered deadlines had to be pushed back in light of the time and effort required to "deinstitutionalize the plaintiff-patients confined to Guerrero." *Fifteenth Report* at 5. In response, the Assistant Secretary submitted a signed document on December 21, 1990, entitled "Commentaries and Exceptions to The Master's Fifteenth Report." The Assistant Secretary specifically took exception to the Special Master's use of the term "confined" and stated that

> [p]atients residents of Guerrero are not confined. Confine means—"restrain within limits; to restrain with in limits; imprison." Webster's New International Dictionary 2nd Ed. Unabridged. These patients can go back to where they come from, a family—at any time they want. The problem is that in the majority of the cases, the family does not want the patient to return or the patient cannot go back to the family because it is the source of the mental problem and/or triggers a decompensation. These patients have no other alternative just to reside there or go to one of the facilities of the rehabilitation division of the Mental Health Department if it is accepted by the resident.

*Id.* at 2-3.

Putting all semantical differences surrounding the word "confined" aside, the thrust of the Assistant Secretary's statement was to certify to the Court that the patients at Guerrero could leave the hospital "at any time they want" and that as an alternative to returning to their families, the patients had available to them the option of going to one of the rehabilitation divisions of the Mental Health Department. This conclusion conflicted with the voluminous record compiled in this case. Moreover, such a conclusion would, if true, divest this Court of jurisdiction by withdrawing the factual predicate upon which this case is based. Accordingly, the Court, on January 9, 1991, instructed the Special Master "to investigate and verify whether Hospital patients transferred to Guerrero have been 'confined' there during the past three years, or whether they have been free to leave at any time." *Id.* at 5.

After reviewing the Special Master's *Seventeenth Report*, which included the findings of the Advisory Interdisciplinary Team (AIT) on the issue of the Guerrero patients' voluntary status, *see id.* at 18-23, the Court, by order of May 23, 1991, concluded that "beyond all doubt ... the assertion made to the Court by the Assistant Secretary for Mental Health ... was un-

true and misleading." *Id.* at 4. *See generally,* pp 4–11. The Court also found that "[o]n the basis of the unrefuted record the Assistant Secretary for Mental Health had no factual basis for his statement" and that "the Assistant Secretary did not make 'reasonable inquiry' before submitting his statement to the Court," in violation of Rule 11. *Id.* at 11. Nevertheless, the Court afforded the Assistant Secretary an opportunity to show cause why Rule 11 sanctions should not be imposed. This, the Assistant Secretary failed to do.

## II. DISCUSSION

### A. *Rule 11*

 Rule 11 of the Federal Rules of Civil Procedure is designed to "deter baseless filings in the District Court," *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 392, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990), with the ultimate objective of "curbing abuses of the judicial system." *Id.* 496 U.S. at 397, 110 S.Ct. at 2457. Rule 11, as amended, provides in relevant part:

> The signature of an attorney or *party* constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information and belief formed *after reasonable inquiry* it is well grounded in fact and is warranted by existing law ... and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction.... (emphasis added).

As is clear from the plain meaning of the Rule, all signatures, whether by an attorney or a party,[1] certify to the court that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is not frivolous and that the signer is not acting with an improper purpose. *See* 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1335, pp. 57–58 (2d ed. 1990).

 There are thus two grounds for sanctions under Rule 11: the "reasonable inquiry" clause and the "improper purpose" clause. As each clause imposes an independent obligation, a violation of either is sufficient to warrant Rule 11 sanctions. *Lancellotti v. Fay,* 909 F.2d 15, 18–19 (1st Cir.1990); *Robinson v. National Cash Register Co.,* 808 F.2d 1119, 1130 (5th Cir. 1987). The "reasonable inquiry" clause is itself divided into two subparts: whether the document is well-grounded in fact and whether it is well-grounded in law. Similarly, a violation of either of these subparts of the "reasonable inquiry" clause constitutes a violation of Rule 11. *Lancellotti,* 909 F.2d at 19, n. 4; *Brown v. Federation of State Medical Boards of U.S.,* 830 F.2d 1429, 1435–36 (7th Cir.1987).

 In order to "reduce the reluctance of courts to impose sanctions," *Advisory Committee Note,* 97 F.R.D. 165, 198 (1983), Rule 11 underwent a revision in 1983. By deleting the subjective standard and adding parties to its scope, the 1983 amendments "impose much more specific and extensive obligations on parties and their counsel." *Lancellotti,* 909 F.2d at 18 (citations omitted). Rule 11 now employs an objective standard of reasonableness in lieu of the previous subjective bad faith standard. *Business Guides v. Chromatic Communications Enterprises Inc.,* 498 U.S. 533, ——, 111 S.Ct. 922, 932, 112 L.Ed.2d 1140

---

**1.** It is no longer disputed that Rule 11 applies both to represented and unrepresented parties. *See Business Guides v. Chromatic Communications Enterprises,* 498 U.S. 533, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991); 2A J. Moore & J. Lucas, *Moore's Federal Practice* § 11.02[3], pp. 11–15—11–17, (2d ed. 1990). As the Supreme Court observed in *Business Guides,* "[r]epresented parties, despite having counsel, routinely sign certain papers ... during the course of litigation.... [Thus] the signatures of the party ... must satisfy the certification requirement.... [A] represented party who signs his or her name bears a personal, nondelegable responsibility to certify the truth and reasonableness of the document." 498 U.S. at ——, 111 S.Ct. at 930–31.

(1991). Thus good faith no longer provides a safe harbor for frivolous filings. "[A]ttorneys and parties alike [now face] an affirmative duty of reasonable inquiry 'more stringent than the original good-faith formula.'" *Lancellotti*, 909 F.2d at 18 (citations omitted). Rule 11 sanctions may now be imposed due to incompetence as well as willfulness. *Cruz v. Savage*, 896 F.2d 626, 631 (1st Cir.1990).

■ A determination of reasonable inquiry is largely fact specific. Courts, however, must avoid using the benefit of hindsight in assessing the merit of a particular document. *Cruz v. Savage*, 896 F.2d at 631. Rather, the critical question is whether the signer conducted a reasonable prefiling inquiry such that his document, when signed, could be considered well-grounded in fact and law. *Business Guides*, 498 U.S. at ——, 111 S.Ct. at 933. While Rule 11 clearly states that any signer must conduct a reasonable inquiry or face sanctions, "what is objectively reasonable for a client may differ from what is objectively reasonable for an attorney." *Id.* (citations omitted). The standard is thus one of reasonableness "under the circumstances." *Id.*

■ The Court need not tarry long on the question of the veracity of the Assistant Secretary's statement. In its May 23, 1991 Order, the Court adopted the findings of the AIT and concluded that the Assistant Secretary's statement was false and misleading. Rather than reiterate each finding here, the Court simply notes the AIT's conclusion:

> Beyond questions of the labels "voluntary" and "involuntary" there should be stressed that in the overwhelming majority of these cases there was a failure to comply with the guarantees which the Mental Health Code provides to patients. This consistent failure of compliance causes us to classify all these patients as involuntary, based on violations as basic as the failure to provide orientation about their rights to these patients.

That resulted in an absence of informed consent and deprivation of the liberty of these patients.

*See* May 23, 1991 Court Order at 7–8.

The AIT finding could hardly have come as a surprise to the Assistant Secretary as his conclusion is belied by numerous references in the record to the "confinement" of the plaintiffs.[2] The Assistant Secretary's perception that there were rehabilitation facilities available for the patients of Guerrero also clearly contradicts the record. Had the Assistant Secretary conducted a reasonable inquiry, he would have noted the AIT's 1990 second evaluation report as well as the Special Master's reports, and found that the lack of rehabilitation centers was one of the central findings and criticisms of the conditions affecting RPPH patients transferred to Guerrero: that patients certified for transfer had been and were waiting interminably for appropriate rehabilitation facilities to be made available.

In addition, simply by keeping in contact both with the personnel in the Rehabilitation Division and with his own appointed Task Force, the Assistant Secretary should have known that the needed rehabilitation facilities were *still being created* at the time of the submission of his document, in December of 1990. Prior to February 1991, RPPH patients confined to Guerrero had been waiting for years for suitable rehabilitation facilities to be made available. By asserting, prior to February 1991, that rehabilitation facilities were available for the Guerrero patients, the Assistant Secretary certified to a fact which was untrue and entirely misleading. Since without any difficulty at all he could have inquired and determined the truth or falsehood of his assertion, his failure to make a reasonable inquiry is without question a violation of Rule 11.

When given the opportunity to show cause why sanctions should not be imposed, the Assistant Secretary admitted

---

**2.** *See e.g.* Court Order of August 9, 1990 at 4; Special Master's *Fourteenth Report* of October 18, 1990 at 3, 22; Act No. 116 of 1980, 24 L.P.R.A. § 4001 *et seq.;* Stipulation No. 13 of the 1977 Stipulations. For a full discussion of the history of the use of the term confine, *see* Special Master's *Seventeenth Report* of April 19, 1991 at 35–40.

that his signed document was "not the complete truth that I intended to be—to make clear." (Transcript at 114). Given an opportunity to clarify what he intended to say, the Assistant Secretary explained that "when I mean the patient can go out when they want, it is that they can go out when they want if they are in the ... medical condition to go out and if the facilities are available or the family is there to receive them." Transcript at 62. When the Court asked whether these qualifications appeared in the signed document, the Assistant Secretary replied, "[n]o. I stated it to my lawyers." Transcript at 114. According to the Assistant Secretary's testimony, he had reservations about signing the document, *see* Transcript at 78, but was assured by his lawyers that he could sign. The Assistant Secretary explained:

> I asked my lawyers and I have a fight with them, you know, about that because I told them I have to put here clear that they could go back if the medical condition justify it, if there is an alternative in the community for him to be go back, or if the family wants him, and they told me ... that had not to be included because that's obvious, you know.... So they convince me, Your Honor, that I can sign that.

Transcript at 71.

It is clear from the record that the statement signed by the Assistant Secretary was prepared for his signature in the Commonwealth Justice Department. If in fact, as he testified, his attorneys advised him to sign the statement, in spite of his remonstrances that it was not the complete truth and needed to be properly qualified in order to be accurate, the attorneys responsible for convincing him to sign the statement may have violated the Model Rules of Professional Conduct of the American Bar Association, Rule 3.3, "Candor toward the Tribunal," and Rule 3.4, "Fairness to Opposing Party and Counsel." Accordingly, to verify the truth of the Assistant Secretary's testimony with respect to how he was advised by his attorneys, the matter will be referred for investigation to a disciplinary committee in accordance with Rule 211.4(B) and .5 of the Local Rules of the District Court for the District of Puerto Rico. *See Culebras Enterprises Corp. v. Rivera–Rios,* 846 F.2d 94, 98 (1st Cir. 1988).[3]

Whatever may be the eventual outcome of the disciplinary proceeding, the Assistant Secretary's testimony in the show cause hearing did nothing to dispel the Court's conclusion that sanctions are warranted. Instead, the show cause hearing further served to implicate the Assistant Secretary since he testified that he knew that the December 21, 1990 statement needed to be appreciably qualified to be true, yet he nonetheless signed and submitted the document to the Court. The Assistant Secretary's defense is essentially that he told the truth to his attorneys, but that they persuaded him that he need not tell the entire truth to the Court. The strictures of Rule 11 cannot be circumvented in this way. The Court finds that the Assistant Secretary submitted a document which "to the best of the signer's knowledge" was not well grounded in fact.

■ It remains for the Court to assess what Rule 11 states must be "an appropriate sanction." Fed.R.Civ.P. 11. While the Court is mindful of chilling vigorous advocacy, we note that Rule 11, as amended, is phrased as a directive, employing the imperative "shall." Accordingly, where the strictures of the rule have been transgressed, an appropriate sanction is mandated in order to give effect to the Rule's

---

**3.** The purpose behind the Assistant Secretary's signed statement might well have been intended to be consistent with, and to reaffirm, an assertion made by the Solicitor General in the November 7, 1990 oral argument on the jurisdictional appeal taken in this case. As set forth in plaintiffs' comments to AIT's April 1, 1991 report, in his argument to the Court of Appeals the Solicitor General asserted that RPPH patients transferred to Guerrero were voluntarily there and could leave at will. "Comments and Objections to the April 1st, 1991 Report," April 11, 1991, at 2, *cited in* Special Master's *Seventeenth Report* at Appendix H–34. Thereafter, in his reply brief, the assertion was repeated: "all of the Hospital's former patients based at the Guerrero Therapeutic Community ... are there voluntarily." *Id.* The assertion, of course, goes to the core of defendants' jurisdictional argument.

central goal of specific and general deterrence. *See Cooter & Gell*, 496 U.S. at 392, 404, 110 S.Ct. at 2454, 2460.

■ Rather than delineating the parameters of appropriateness, the Advisory Committee Notes deliberately afford the district courts broad discretion " 'to tailor sanctions to the particular facts of the case, with which it should be well acquainted.' " *Bay State Towing Co., v. Barge American 21*, 899 F.2d 129, 133 (1st Cir.1990) (quoting Advisory Committee Note on 1983 amendments); *see also Cooter & Gell*, 496 U.S. at 400, 110 S.Ct. at 2458 (noting that the district court is empowered to exercise its discretion it levying Rule 11 sanctions); *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976) (the trial court's discretion in fashioning sanctions is broad). The First Circuit Court of Appeals recently observed that the elasticity of Rule 11 is not accidental. *Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 394 n. 6 (1st Cir.1990). Rather, "so long as the sanction selected is 'appropriate,' ... the Civil Rules place virtually no limits on judicial creativity." *Id.* at 394. Nevertheless, an appropriate sanction should be no more severe than necessary to assure the deterrent objective of Rule 11. *See Spiller v. Ella Smithers Geriatric Center*, 919 F.2d 339, 347 (5th Cir.1990); *In re Kunstler*, 914 F.2d 505, 525 (4th Cir.1990).

■ In determining the appropriate sanction in this case the Court initially notes that this is not a case where the represented party was hampered in arriving at the heart of the factual truth and is thus "suffering some pressing need that ... would warrant special liberality." *Bay State Towing*, 899 F.2d at 133. The Assistant Secretary is not an unsophisticated, uneducated person who unwittingly appended his name to a document, the contents of which were unbeknownst to him. Rather, he has been a psychiatrist for 35 years and is the chief executive officer of Puerto Rico's mental health system, directing a public agency which provides mental health services to a major part of the island's population. Consequently, he is optimally positioned to obtain the most reliable information about whether the patients at Guerrero were free to leave at will and whether alternative facilities were available.

Moreover, the Assistant Secretary had been warned personally in the September 7, 1990 contempt hearing that further abuses of the judicial process would not be tolerated. As the Court explicitly stated in its subsequent Order of October 4, 1990,

[b]y submitting false and misleading information defendants subverted the integrity and efficiency of the judicial process. This was not a case of honest mistake, or even negligent conduct, but rather of intentionally false and unreliable statements and documents which misled the Court.... There should be no doubt in defendants' minds, however, that in the remaining stages of this case *all information submitted to the Special Master and to the Court must be accurate and truthful. A repetition of the submission of unreliable, misleading or untruthful information will simply not be tolerated.*

*Id.* at 16–17 (emphasis added). The Assistant Secretary was thus put on clear notice. Yet, less than three months after receiving this overt admonition, he certified information to the Court that he knew to be false.

This information was not lightly regarded. Rather, it precipitated a Court ordered investigation at considerable cost, consuming the time and energy of AIT, the Special Master, the parties and their attorneys, in order to determine the truth of his assertions. Additionally, the Court has had to devote time and thought to what has essentially been an unproductive deviation from the main task of securing compliance with the Court's orders in this case.

In considering an appropriate sanction based on these three factors, the Court notes the succinct observation by the Supreme Court: "The essence of Rule 11 is that signing is no longer a meaningless act; it denotes merit." *Business Guides*, 498 U.S. at ——, 111 S.Ct. at 930. The Court thus takes the certification of statements very seriously and will not allow the man-

date of Rule 11 to be flouted. Here, the Court has not once but thrice warned defendants of the consequences of abusing the judicial process.[4] Consequently, the Assistant Secretary's conduct is that much more egregious. Hopefully, the imposition of sanctions in this case will "encourage self-policing by attorneys and strengthen the hand of those attorneys who would discourage clients from taking ... positions totally lacking in merit." *Bay State Towing*, 899 F.2d at 134. Accordingly, the Court hereby imposes a monetary sanction in the amount of $20,000, to be assessed personally against the Assistant Secretary for Mental Health, Dr. José A. Núñez López.[5]

### B. *Guidelines For Non–Compliance With Time Limits*

In its May 23, 1991 Order, the Court noted that there was substantial evidence to support the conclusion that the Assistant Secretary failed to respond expeditiously to the January 31, 1991 deadline for completing the interdisciplinary evaluations of RPPH patients confined to Guerrero. *See May 23 Order* at 23. Given an opportunity to show cause why he should not be admonished that he will be held personally accountable for such conduct in the future, the Assistant Secretary explained that he had difficulties recruiting adequate professional personnel for the Guerrero interdisciplinary team, and assured the Court that he was collaborating in good faith with the Special Master and tripartite process.

Since the evidentiary record is less than conclusive, rather than admonish the Assistant Secretary for failure to comply with a court-ordered deadline, it is more appropriate to articulate the precise responsibilities for achieving timely compliance with this Court's orders. First, as in the past, time limits to secure specific compliance objectives will be proposed through the tripar-

tite process, whenever possible, thereafter to be recommended by the Special Master and, finally, to be ordered by the Court. The Assistant Secretary will continue to have significant input in tripartite time-limit determinations. Second, once a time limit has been set by Court order, it is to be faithfully kept.

Third, if it cannot be complied with, before the time limit expires the Assistant Secretary will notify the Special Master in writing, explaining why timely compliance cannot be achieved. An explanation referring to ordinary bureaucratic difficulties will not be persuasive. Rather, circumstances must be unforseen and make timely compliance almost impossible. The Assistant Secretary's explanation should also include a new proposed deadline, supported by reasons why it can be satisfied. Fourth, the Secretary of Health will review the Assistant Secretary's explanation and will state whether he agrees with the latter's position. Fifth, the Special Master will make a recommendation to the Court on whether the positions of the Assistant Secretary and the Secretary of Health should be accepted.

### III. CONCLUSION

WHEREFORE, the Court having concluded that monetary sanctions should be imposed against the Assistant Secretary personally, Dr. José A. Núñez López, is hereby directed to deposit with the Clerk of the Court the sum of $20,000 within 30 days of this Order, as an appropriate sanction for his violations of Rule 11 of the Federal Rules of Civil Procedure.

The Assistant Secretary for Mental Health and the Secretary of Health of the Commonwealth of Puerto Rico are on notice that they are to follow the guidelines in Section II–B of the Court's opinion whenev-

---

4. *See* October 4, 1990 Court Order at 12–20; March 6, 1990 Court Order at 38–48; December 8, 1988 Court Order at 2–6.

5. *Cf. Business Guides*, 498 U.S. ——, 111 S.Ct. 922 (affirming the imposition of a $13,865.66 sanction award for filing a frivolous copyright infringement action); *Chambers v. NASCO*, ——

U.S. ——, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (affirming an award of $996,644.65 in attorney's fees for bad faith litigation); *Bay State Towing*, 899 F.2d 129 (affirming a $20,000 sanction award for asserting a defense that was not well-grounded in fact).

er timely compliance with court-ordered deadlines cannot be achieved.

A separate order will issue designating a Disciplinary Committee charged to determine whether attorneys for defendants violated the Model Rules of Professional Conduct related to the Assistant Secretary's submission to the Court of his signed December 21, 1990 statement.

A copy of this Opinion and Order, and the certified copy of the transcript of the June 17, 1991 hearing, shall be transmitted forthwith to the Court of Appeals.

A copy of this Opinion and Order shall be notified to the Special Master.

IT IS SO ORDERED.