**MAINE AUDUBON SOCIETY, et al., Plaintiffs, Appellants,**

v.

**Emery PURSLOW, et al., Defendants, Appellees.**

No. 90–1057.

United States Court of Appeals, First Circuit.

Heard July 6, 1990.

Decided July 6, 1990.

Karin R. Tilberg and Harrison L. Richardson, with whom Richardson & Troubh and Elizabeth G. Stouder were on brief, for plaintiffs, appellants.

Before BREYER, Chief Judge, BOWNES, Senior Circuit Judge, and SELYA, Circuit Judge.

SELYA, Circuit Judge.

Fairly characterizable as a matter of principle, this appeal challenges the district court's direction that two respected members of the Maine bar jointly pay a small monetary sanction ($250.00).[1] Although we believe that the sanction order approached the margins of the district court's wide discretion, we cannot say it crept past the edge. We therefore affirm.

I

The events leading up to the sanction are chronicled in four successive rescripts of the district court, *see Maine Audubon Society v. Purslow*, 672 F.Supp. 528 (D.Me. 1987) (order dismissing complaint); *Maine Audubon Society v. Purslow*, No. 87–0297 (D.Me. Oct. 18, 1989) (order allowing Rule 11 motion); *Maine Audubon Society v. Purslow*, No. 87–0297 (D.Me. Dec. 14, 1989) (order fixing penal amount); *Maine Audubon Society v. Purslow*, No. 87–0297 (Dec. 14, 1989) (order refusing reconsideration), and do not bear detailed reiteration. For our purposes, it suffices to cull out certain critical facts:

1. On September 4, 1987, plaintiff's attorney brought suit under the Endangered Species Act, 16 U.S.C. §§ 1531–1544 (the Act), seeking to enjoin defendants, private citizens, from constructing a residential subdivision in a manner deemed harmful to the breeding habitat of a pair of American bald eagles. Counsel applied, *ex parte*, for a temporary restraining order (TRO).

2. The Act contains a 60–day waiting period, measured from the giving of a specified notice of intent to sue (Notice), before a party can bring a citizen's suit against a nonfederal actor. *See* 16 U.S.C. § 1540(g)(2)(A)(i). Counsel sued in disregard of this requirement: the Notice had not been prepared and mailed until September 3, 1987 (the day before plaintiff's civil action was instituted).

---

**1.** The more senior lawyer, who seems to have been less involved in what transpired, declined the district court's invitation to stake out a position separate from junior counsel with regard to sanctions. We admire the lawyer's steadfastness and honor it. Thus, while we write as if only one attorney was involved, our opinion applies equally to the attorney-appellants (both of whom signed the complaint).

3. On their face, the pleadings did not hint at any problem respecting the waiting period. Rather, the complaint asserted that plaintiff gave the required Notice "[o]n October 3, 1987"[2] and that "[t]he requirements of 16 U.S.C. section 1540(g)(2)(A)(ii) and (iii) are met." Plaintiff's simultaneous filings, including a motion for TRO and a memorandum in support thereof, were similarly unrevealing. A fair reading of the initial set of papers left the unmistakable impression that notice was not in issue.

4. Although the decision to seek the TRO was made in some haste—virtually by definition, all such decisions are time-sensitive—there was ample room to have researched the Act's requirements carefully. The Society had become interested in the matter more than a month earlier and counsel had been centrally involved since that time. Moreover, the district court found, supportably, that no "exonerating emergency" existed on the day suit was started. Dist.Ct.Op. (Oct. 18, 1989) at 8. The nesting season had ended; the eagles were gone; the threatened harm lacked any real immediacy; and in any event, the state attorney general was, as the Society's lawyer knew, considering immediate intervention.[3]

5. The TRO hearing occurred on September 9, 1987. Counsel, appearing *ex parte* before the district judge, did not volunteer any information about the Notice or its likely debilitating effect on the suit.

It was not until the court raised the issue that the attorney even acknowledged noncompliance with the statutory directive.

6. The district court refused to grant the TRO.

7. When defense counsel entered an appearance, he docketed motions to dismiss and for sanctions. After plaintiff served an amended complaint, the district court granted both motions. First, it found the notice requirement to be mandatory and jurisdictional, 672 F.Supp. at 529–30, and dismissed the suit for want of proper notice. *Id.* Subsequently, the court levied the sanction because of the way in which counsel had broached—or failed to broach—the notice requirement during the early stages of the proceeding.

8. After the Society and its lawyers appealed, defendants, presumably because of the relatively modest amount in controversy, declined to file a brief. Consequently, we heard oral argument only on appellants' behalf. *See* Fed.R.App.P. 31(c).

## II

■ It is by now apodictic that a district court's decision to impose sanctions under Rule 11 is reviewable only for abuse of discretion.[4] *See, e.g., Cooter & Gell v. Hartmarx Corp.,* — U.S. ——, 110 S.Ct. 2447, 2457–62, 110 L.Ed.2d 359 (1990); *Figueroa–Ruiz v. Alegria,* 905 F.2d 545, 547 n. 2 (1st Cir.1990); *Anderson v. Beatrice Foods Co.,* 900 F.2d 388, 393 (1st Cir.1990);

---

**2.** Had the complaint given the correct date—September 3, 1987—rather than an obviously incorrect future date, the futility of plaintiff's position might have been more apparent and the resultant difficulty minimized or avoided.

**3.** In fact, the attorney general filed an action in state court on the same day (September 4, 1987), invoking a state site location law. Later that afternoon, the state court issued a TRO banning construction activity at the subdivision site. That injunction was in effect when the Society's TRO motion came before the district court.

**4.** The rule provides in pertinent part:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction....

Fed.R.Civ.P. 11.

*Kale v. Combined Ins. Co.*, 861 F.2d 746, 757–58 (1st Cir.1988). Because "[t]he trial judge, steeped in the facts and sensitive to the interplay amongst the protagonists, is ideally equipped to ... render an informed judgment," *Anderson*, 900 F.2d at 394, our review is deferential. Thus, a party objecting to the imposition of sanctions "bears a heavy burden of demonstrating that the trial judge was clearly not justified in entering [the] order." *Id.* at 393 (citation omitted).

While we are not unsympathetic to appellants' position, we do not believe that they can shoulder their "heavy burden." The language of the Act is explicit: no citizen's suit against a private party "may be commenced ... prior to sixty days after written notice of the violation has been given to the Secretary [of the Interior], and to any alleged violator of any ... provision or regulation [under the Act]." 16 U.S.C. § 1540(g)(2)(A)(i). Our earlier decisions made it quite clear that, as the court below recognized, we were committed to "read[ ] the 60–day notice requirement in environmental statute citizen suit provisions strictly." 672 F.Supp. at 530 (citing cases). The handwriting was on the wall.

To be sure, counsel claims to have been unaware of our prior precedents and argues that, conversely, he/she had a passing familiarity with case law favoring a more relaxed "substantial compliance" rule. *See, e.g., Sierra Club v. Block*, 614 F.Supp. 488, 492 (D.D.C.1985). While the district court rejected this asseveration rather summarily, it gives us some pause. We hold counsel to standards of due diligence and objective reasonableness—not perfect research or utter prescience. Under ordinary circumstances, we might think that, in the heat of the moment, counsel's "inquiry" into the law, Fed.R.Civ.P. 11, though overlooking precedent close to the point, was not so deficient as to warrant a monetary sanction—particularly since the "substantial compliance" cases might have amounted, in the Rule's idiom, to "a good faith argument for the ... modification ... of existing law...." We have no inclination to transform Rule 11 into a refrigeration device designed to chill reasonable creativity on counsel's part.

Nonetheless, the circumstances at bar are not ordinary. For one thing, it is hard to see any "substantial compliance" issue here. In the cases relied on by appellants, suit was filed well after the Notice was sent and after the Secretary had responded to it, declining to act. *See, e.g., Sierra Club v. Block*, 614 F.Supp. at 492 (notice sent June 7; federal officials replied July 2 and reaffirmed position July 5; suit commenced July 12). In the instant case, the Society knocked on the courthouse door one day after mailing the Notice and before receiving any response. Even more important, plaintiff's counsel never undertook to disclose the notice requirement face up and squarely in the early going, but blurred it in the complaint, leaving the distinct impression that the requisite formalities had been completed. This lapse was compounded by (1) counsel's omission of any discussion of the point in either the motion for TRO or accompanying memorandum, and (2) counsel's failure to direct the court's attention to the notice question at the TRO hearing. Whether or not the lawyer knew of the controlling First Circuit precedent, he/she undeniably knew that notice loomed as a problem—and the duty of reasonable inquiry includes, as we see it, a duty of reasonable disclosure.

Moreover, even though counsel's neglect to disclose appears to have been inadvertent, the omission carried particular weight because of the context in which it occurred. Attorneys are officers of the court and judges must rely on them in a number of ways. In the usual circumstance, the presence of opposing counsel creates a built-in system of checks and balances which aids the judge in defining problem areas. Where counsel appears *ex parte*, however, the customary checks and balances do not pertain—and the court is entitled to expect an even greater degree of thoroughness and candor from unopposed counsel than in the typical adversarial setting. *Cf., e.g., Jorgenson v. County of Volusia*, 846 F.2d 1350, 1352 (11th Cir.1988) (in *ex parte* proceeding, "appellants had a duty to refrain from affirmatively misleading the court as

to the state of the law"); *Cedar Crest Health Center, Inc. v. Bowen*, 129 F.R.D. 519, 525 (S.D.Ind.1989) (disclosing potentially dispositive cases "is a duty of every practitioner, the violation of which is sanctionable under Rule 11"; the point holds "particularly true" when counsel proceeds *ex parte*). Here, we think the district court could reasonably find, in its discretion, that counsel had a duty to be more forthcoming.

### III

We need go no further. Where evaluative judgments in discretionary matters are concerned, the trier's choice among plausible alternatives cannot constitute reversible error. Put bluntly, the abuse-of-discretion model does not permit an appellate court freely to substitute its view of a matter for that entertained by the trial court. *See, e.g., Anderson v. Cryovac, Inc.*, 862 F.2d 910, 923 (1st Cir.1988) (no abuse of discretion unless "it plainly appears that the court below committed a meaningful error in judgment"); *see also In re Josephson*, 218 F.2d 174, 182 (1st Cir.1954) (Magruder, J.) (analogizing abuse of discretion to test for clear error under Fed.R.Civ.P. 52(a)). Employing this framework, considering the circumstances, and remaining mindful of the inescapable "fact that at its core imposition of sanctions is 'a judgment call,' " *Kale*, 861 F.2d at 758 (citation omitted), we are left shy of a definite and firm conviction that a serious mistake was made. Hence, we cannot set aside the challenged order.

*Affirmed.*