**Roberto NAVARRO–AYALA, et al., Plaintiffs, Appellees,**

v.

**Jose A. NUNEZ, Defendant, Appellant.**

No. 91–2084.

United States Court of Appeals, First Circuit.

Heard May 4, 1992.

Decided July 13, 1992.

---

Before SELYA, Circuit Judge, COFFIN and CAMPBELL, Senior Circuit Judges.

SELYA, Circuit Judge.

Today marks the third time within the past two years that we have had occasion to visit the garden where this hardy perennial of a case continues to bloom. The appeal at hand involves the district court's imposition of a $20,000 sanction against defendant-appellant Jose A. Nunez, the Assistant Secretary of Mental Health of the Commonwealth of Puerto Rico. For the reasons that follow, we conclude that, although the court acted appropriately in levying a sanction, the amount of the sanction should be reduced.

## I

This litigation started in 1974 when a class action was brought on behalf of patients at the Rio Piedras Psychiatric Hospital (Hospital), a government-operated facility. The defendants were officials of the Commonwealth. In 1977, the parties executed a settlement stipulation. The district court approved it. Since that time, the Hospital has remained subject to the district court's oversight. A Special Master, appointed under the aegis of Fed.R.Civ.P. 53, has assisted the district judge for several years.[1]

## II

The instant appeal has its genesis in the Special Master's fifteenth report, submitted to the district court on December 4, 1990. The report focused on the extent of the Commonwealth's progress toward deinstitutionalization of the Hospital's patient population. It mentioned that, as part of the deinstitutionalization effort, some patients had been transferred to the Guerrero Therapeutic Community (GTC), a mental health facility providing care and

Alice Net Carlo, with whom Garcia Rodon, Correa Marquez & Valderas, Hato Rey, P.R., was on brief, for appellant.

Carlos Garcia Gutierrez, with whom Luis M. Villaronga, San Juan, P.R., Armando Cardona Acaba, and Puerto Rico Legal Services, Inc., Bayamon, P.R., were on brief, for appellees.

1. The contours of this litigation have been painstakingly sculpted in connection with the earlier appeals. We see no benefit to repastinating well-ploughed ground, opting instead to refer the reader who may thirst for exegetic detail to the opinions in those cases. *See Navarro–Ayala v. Hernandez–Colon,* 956 F.2d 348 (1st

therapy for sub-acute cases.[2] The report then noted that certain court-ordered deadlines would have to be extended because of the time required to "deinstitutionalize the plaintiffs-patients confined to [the GTC]."

On December 21, 1990, the defendants submitted their objections to Report No. 15. In that pleading, appellant took issue with the portion of the report that spoke of patients being "confined to" the GTC. The objection, which Dr. Nunez signed under oath, stated in pertinent part:

> Patients residents of Guerrero are not confined. Confine means—"restrain within limits; to restrain within limits; imprison." Webster's New International Dictionary 2nd Ed. Unabridged. These patients can go back to where they come from, a family—at any time they want. The problem is that in the majority of the cases, the family does not want the patient to return or the patient cannot go back to the family because it is the source of the mental problem and/or triggers a decompensation. These patients have no other alternative just to reside there or go to one of the facilities of the rehabilitation division of the Mental Health Department if it is accepted by the resident.

This assertion seemed quite plainly to say that inmates were free to leave the GTC at any time they chose. So read, it ran counter to a fundamental premise on which the district court's handling of the case had been predicated. Noting the conflict, the district court instructed the Special Master "to investigate the truth of the matter" and to "verify whether Hospital patients transferred to [GTC] have been 'confined' there ... or whether they have been free to leave at any time."

To carry out the court's mandate, the Special Master enlisted the aid of his Advisory Interdisciplinary Team (AIT). He also held a hearing at which Dr. Nunez testified. The Special Master's seventeenth report incorporated the AIT's comments on the question of confinement. In direct response to the district court's inquiry, the Special Master wrote: "In light of the investigative record, only one conclusion is possible: there was no factual basis for the Assistant Secretary's December 21, 1990 statement to the court."

The appellant took exception to this finding, but presented no additional evidence to rebut it. The district court ratified the finding. _See_ Fed.R.Civ.P. 53(e)(2) (in non-jury actions, the district court "shall accept the master's findings of fact unless clearly erroneous"). In so doing, the judge wrote:

> On the basis of the unrefuted record the Assistant Secretary for Mental Health had no factual basis for his statement to the Court.... The record also demonstrates, irrefutably, that the Assistant Secretary did not make "reasonable inquiry" before submitting his statement to the Court, that as Secretary for Mental Health he was in a position to gather accurate information, but failed to do so.... Nor did defendants' ... comments and exceptions to [Report No. 17] present an acceptable justification for the failure of the Assistant Secretary to make reasonable inquiry prior to submitting a sworn statement which subsequent investigation demonstrated to be untrue and misleading.

At the same time, the judge ordered Dr. Nunez to "show cause why he should not be sanctioned for violation of Rule 11 of the Rules of Civil Procedure."[3]

Cir.1992); _Navarro–Ayala v. Hernandez–Colon,_ 951 F.2d 1325 (1st Cir.1991).

**2.** The interface between the GTC and the Hospital is described at some length in our earliest opinion, _Navarro–Ayala v. Hernandez–Colon,_ 951 F.2d 1325 (1st Cir.1991).

**3.** The rule provides in pertinent part:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in

the attorney's individual name, whose address shall be stated.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnec-

A show-cause hearing was held on June 17, 1991. After receiving testimony and documentary evidence, the court took the matter under advisement. On July 8, 1991, 1991 WL 353359, the court filed an opinion concluding that appellant violated Rule 11 by submitting a sworn pleading which to his knowledge "was not well grounded in fact." The court imposed a monetary sanction in the sum of $20,000, to be paid personally by Dr. Nunez. This appeal followed.

### III

We consider, first, the principles controlling appellate review in cases of this stripe. We then proceed to determine whether any sanction was warranted.

### A.

■ It is apodictic that a district court's decision to impose Rule 11 sanctions is reviewable under an abuse-of-discretion rubric. *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 2457–61, 110 L.Ed.2d 359 (1990); *Maine Audubon Soc'y v. Purslow,* 907 F.2d 265, 267 (1st Cir.1990). Because the decision about whether a litigant's (or lawyer's) actions merit the imposition of sanctions is heavily dependent upon the district court's first-hand knowledge of the case and its nuances, appellate review is deferential. *See Maine Audubon,* 907 F.2d at 267–68; *Anderson v. Beatrice Foods Co.,* 900 F.2d 388, 393–94 (1st Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 233, 112 L.Ed.2d 193 (1990). Thus, a party protesting an order in respect to sanctions bears a formidable burden in attempting to convince the court of appeals that the district judge erred in finding that Rule 11 was, or was not, violated. *Maine Audubon,* 907 F.2d at 268.

■ Rule 11 applies foursquare to represented parties. *Business Guides, Inc. v. Chromatic Communications Enterps., Inc.,* — U.S. ——, 111 S.Ct. 922, 931, 112 L.Ed.2d 1140 (1991). Prior to signing a pleading, a litigant must fulfill the "affirm-

ative duty to conduct a reasonable inquiry into the facts and the law." *Id.,* 111 S.Ct. at 933. Whether or not this duty has been breached depends on the objective reasonableness of the litigant's conduct under the totality of the circumstances. *See id.; see also Lancellotti v. Fay,* 909 F.2d 15, 18–19 (1st Cir.1990).

■ To determine whether a litigant made a reasonable inquiry into the facts, the district court should examine all the circumstances, including the complexity of the subject matter, the party's familiarity with it, the time available for inquiry, and the ease (or difficulty) of access to the requisite information. *See Brown v. Federation of State Medical Bds.,* 830 F.2d 1429, 1435 (7th Cir.1987); *Century Prods., Inc. v. Sutter,* 837 F.2d 247, 250–51 (6th Cir.1988); *Thomas v. Capital Sec. Servs., Inc.,* 836 F.2d 866, 875 (5th Cir.1988) (en banc); *see also* Fed.R.Civ.P. 11, Advisory Committee's Notes, 97 F.R.D. 198, 199 (1983). Litigants, like counsel, are to be held "to standards of due diligence and objective reasonableness—not perfect research or utter prescience." *Maine Audubon,* 907 F.2d at 268. Furthermore, for Rule 11 purposes, a party's pleading must be judged on the basis of what was reasonable when the pleading was filed rather than in hindsight. *See Cruz v. Savage,* 896 F.2d 626, 631 (1st Cir.1990); *Davis v. Crush,* 862 F.2d 84, 88 (6th Cir.1988).

### B.

■ In this instance, the district court's finding that appellant slighted his duty of reasonable inquiry is sufficiently supported by the record. The statements contained in the challenged pleading were demonstrably incorrect. For example, the court below pointed out that those patients who had been involuntarily committed to the GTC— and there were many—were most assuredly not free to depart "at any time they want." The court also observed that, even

essary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initia-

tive, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction....
Fed.R.Civ.P. 11.

as to voluntarily committed patients, there was a severe shortage of rehabilitation facilities, with the result that such patients, once cleared to leave, often remained confined to the GTC for years—a circumstance that, as a practical matter, negated what appellant had characterized as a viable alternative. The court supportably found that the truth underlying these, and other, discrepancies was easily ascertainable by a person in appellant's position. Indeed, at the show-cause hearing, appellant admitted that patients could not simply leave on demand; that he knew as much when he signed the pleading; that the quoted portion of the objection was "not the complete truth"; and that, therefore, he signed it with unexpressed "reservations."

We will not paint the lily. The duty of reasonable inquiry perforce requires that the signer of a pleading act upon the knowledge he acquires. After all, courts cannot function if lawyers and litigants are not forthright. Given the appellant's admission that he knew the truth, but nevertheless signed and swore to an answer that he had reason to believe was both incorrect and misleading, no more was required to warrant the imposition of sanctions.[4]

### IV

Although the lower court did not err in finding a violation of Rule 11, our journey continues. The rule provides that the sanction actually imposed must be "appropriate." *See* Fed.R.Civ.P. 11. We turn, then, to that inquiry.

### A.

The primary responsibility for choosing an appropriate sanction rests with the district court. *See Lancellotti,* 909 F.2d at 20 ("It is ... for nisi prius to decide what sanction is 'appropriate' anent a particular violation [of Rule 11]."); *Anderson,* 900 F.2d at 394 ("The trial judge is best positioned to decide what sanction best fits a particular case or best responds to a particular episode or pattern of errant conduct."). When the district court settles upon a monetary sanction and fixes a dollar amount, a reviewing tribunal should defer, within broad limits, to the district court's exercise of its informed discretion. Nevertheless, the court of appeals must be careful not merely to "rubber-stamp the decisions of the district court." *Velazquez–Rivera v. Sea–Land Serv., Inc.,* 920 F.2d 1072, 1075 (1st Cir.1990) (discussing standard of review for choice of sanctions under Fed.R.Civ.P. 16(f)). Appellate review of the appropriateness of a sanction cannot be allowed to deteriorate into a perfunctory ritual.

The imposition of a Rule 11 sanction usually serves two main purposes: deterrence and compensation. *See Anderson,* 900 F.2d at 394 (collecting cases); *Brown,* 830 F.2d at 1437–38; *see also Cooter & Gell,* 110 S.Ct. at 2454 ("the central purpose of Rule 11 is to deter baseless filings"). Encompassed within these objectives are several related subsidiary goals, e.g., punishing litigation abuse and facilitating case management. *See White v. General Motors Corp.,* 908 F.2d 675, 683 (10th Cir.1990) (citing American Bar Ass'n, *Standards and Guidelines for Practice Under Rule 11* (1988)).

The power to impose sanctions is a potent weapon and should, therefore, be

---

**4.** To be sure, Dr. Nunez testified that he called his attorneys' attention to his concerns about the pleading, but that they assured him it should be filed. Rule 11, however, places the obligation of reasonable inquiry squarely upon the signer of the disputed pleading. *Business Guides,* 111 S.Ct. at 928–31. "The essence of Rule 11 is that signing ... denotes merit. A signature sends a message to the district court that this document is to be taken seriously." *Id.* at 930. The resultant obligation cannot be delegated. Thus, while consultation with counsel may constitute an important step toward fulfilling the duty of reasonable inquiry, a represented party who signs a pleading cannot automatically hide behind an advice-of-counsel defense when the chickens come home to roost. *See id.* at 931. In this case, the signer knew that the disputed statement was incorrect and misleading; thus, no amount of outside advice can excuse his signing and swearing to it (although, as discussed in Part IV, *infra,* the fact that the signer relied on advice of counsel is a factor to be considered in determining what sanction may be appropriate).

deployed in a balanced manner. For that reason, proportionality is often a proxy for appropriateness. *See Anderson,* 900 F.2d at 395 (in fashioning a sanction, it is important that "the punishment should be reasonably suited to the crime"); *Brown,* 830 F.2d at 1439 (similar). That is to say, the trial judge must "take pains [not] to use an elephant gun to slay a mouse." *Anderson,* 900 F.2d at 395.

## B.

■■■■■ With due respect for the district court's considerable discretion, we find the imposition of a $20,000 fine in this case to be grossly disproportionate and, therefore, inappropriate. We explain briefly.[5]

■■■■■ Dr. Nunez, a civil servant, had no personal stake in the litigation and did not stand to gain from the Rule 11 violation. He now stands to lose, having been ordered to pay the impost from his own pocket. We do not fault the court below for this aspect of its order: when a public official or corporate officer violates Rule 11 in the course of performing agentival duties, it is permissible—and frequently wise—from the standpoint of deterrence to direct that the offender pay a monetary sanction personally. Nevertheless, a monetary sanction aimed at deterrence is appropriate only when the amount of the sanction falls within the minimum range reasonably required to deter the abusive behavior. *See In re Kunstler,* 914 F.2d 505, 523 (4th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1607, 113 L.Ed.2d 669 (1991); *White,* 908 F.2d at 684–85; *Doering v. Union County Bd. of Chosen Freeholders,* 857 F.2d 191, 194 (3d Cir.1988). Having in mind appellant's status, there is no reason to believe that payment of a sum

considerably smaller than $20,000 would not be a fully effective deterrent.

In terms of compensation, the record is equally fuliginous. Although the district court made a fleeting reference to the fact that appellant's "no confinement" claim "precipitated a court-ordered investigation at considerable cost ... to determine the truth of [appellant's] assertions," the court never quantified the cost. For our part, we cannot tell, either from the court's rescript or from any other part of the record on appeal, the approximate quantum of expense fairly attributable to the misstatements. We do know, however, that the misstatements, albeit demonstrably inaccurate, were easily provable as such.

■■■ When a sanction is designed to be compensatory, it should not compensate the opposing party, or even a court-appointed master, for any and all costs and expenses incurred in response to the sanctionable conduct. Rather, compensation, as such, should be awarded only for the fair value of response costs reasonably incurred. *See Thomas,* 836 F.2d at 879 (distinguishing between "reasonable" expenses and "actual" expenses in Rule 11 context); *INVST Fin. Group, Inc. v. Chem–Nuclear Sys., Inc.,* 815 F.2d 391, 404 (6th Cir.) (same), *cert. denied,* 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987); *cf. United States v. Metropolitan Dist. Comm'n,* 847 F.2d 12, 17 (1st Cir.1988) (in fee-shifting context, "the law firm's bill need not be swallowed whole by the client's litigation adversary just because it *is* the law firm's bill"). In the present situation, we cannot conceive how the expense involved in laying bare so transparent a set of misstatements should have been more than a fraction of the sanction actually levied. If the plaintiffs or the Special Master, in the name of thoroughness, inadvertently re-

**5.** We begin this explication at somewhat of a loss. The district court never made clear the basis for the $20,000 figure. By the same token, the court did not specify which goal predominated in its mind. We encourage the district courts to make specific findings of this sort in Rule 11 cases in order to help us better understand why a particular sanction has been deemed appropriate in respect to a particular

instance of misconduct. *See, e.g., Figueroa–Ruiz v. Alegria,* 905 F.2d 545, 549 (1st Cir.1990) (holding that the district court should give an explanation of its sanction order "when the reason for the decision is not obvious or apparent from the record"); *Brown,* 830 F.2d at 1438 (in cases involving substantial monetary sanctions, the judge should "state with some specificity ... the manner in which the sanction was computed").

sorted to overkill, that miscalculation should not increase the appellant's burden.

Nor can we discern any other reason sufficient to justify so large a sanction. The violation deserved punishment, but the sting of the lash could have been communicated emphatically through a more modest penalty. The "no confinement" claim involved one small piece of a gargantuan case and was not seriously disruptive of the court's ongoing efforts to achieve institutional reform. Appellant's conduct was not found by the court below to involve malice or bad faith. When called to task, appellant was both candid and remorseful. And, he had some excuse (albeit an insufficient one) for his actions. *See supra* note 4.

We conclude, on the record as a whole, that the sanction, whether viewed as a vehicle for deterrence, for recompense, or for the accomplishment of any other permissible purpose, was inappropriate in amount.

## V

 We are left, then, with the question of remedy. Under ordinary circumstances, we would vacate the award and remand to the trial court to fashion a more appropriate sanction. *See, e.g., Lancellotti,* 909 F.2d at 20. But, we are not necessarily constrained to follow such a course. *See, e.g., Coats v. Pierre,* 890 F.2d 728, 734 (5th Cir.1989) (reducing excessive Rule 11 monetary sanction), *cert. denied,* — U.S. ——, 111 S.Ct. 70, 112 L.Ed.2d 44 (1990); *Cheek v. Doe,* 828 F.2d 395, 398 (7th Cir.) (per curiam) (similar), *cert. denied,* 484 U.S. 955, 108 S.Ct. 349, 98 L.Ed.2d 374 (1987). This litigation has been pending for nearly two decades. The record on appeal is reasonably complete. Too much time has already been spent on Dr. Nunez's regrettable linguistic lapse. We think that this may properly be classified as one of the rare cases in which an appellate court ought to take the bull by the horns and,

rather than remanding, simply select an appropriate sanction.[6] *See, e.g., Eastway Constr. Corp. v. City of New York,* 821 F.2d 121, 124 (2d Cir.) (listing other representative cases), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); *see generally* 9 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 2577 at 699–700 (1971) (the court of appeals may decide an appeal without remanding for further findings if it feels that it is in a position to do so). Believing, as we do, that an amount of $6,500 stands at the outer periphery of permissible sanctions in this case, we affirm the finding of a Rule 11 violation but reduce the amount of the sanction from $20,000 to $6,500.

*Affirmed as modified. No costs.*

---

6. We have occasionally taken the same approach in fee-shifting cases where the sole remaining issue is how much should be awarded to the fee-seeker. *See, e.g., Jacobs v. Mancuso,* 825 F.2d 559, 562–64 (1st Cir.1987) (abjuring remand and fixing amount of the fees to be awarded for work at district court level); *Rogers v. Okin,* 821 F.2d 22, 31 (1st Cir.1987) (similar); *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 951 (1st Cir.1984) (similar).