Eastman Kodak v. Knight                CV-91-359-B     02/23/94
                     UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE


Eastman Kodak Company and
Eastman Credit Corporation

          v.                          Civil Action No. 91-359-B

Karen E. Knight and Ken Knight
d/b/a/ ALL IN ONE HOUR PHOTO and
Daniel T. Murphy

                           **O R D E R**

     On August 30, 1993, defendant Daniel T. Murphy (Murphy) filed a motion requesting this court to impose sanctions pursuant to Fed. R. Civ. P. 11 (Rule 11) against the plaintiffs, Eastman Kodak Company and Eastman Credit Corporation (hereafter collectively referred to as "Kodak") and Kodak's counsel from the firm of Smith, Debnam, Hibbert & Pahl of Raleigh, North Carolina and local counsel for Kodak from the firm of Welts & White, P.C., of Nashua, New Hampshire (hereafter counsel for Kodak collectively referred to as "Welts & White").  Murphy contends that after Welts & White became aware that the claim against him was not well grounded in fact, they nevertheless continued to pursue the claim in violation of Rule 11.  Murphy also asserts that Welts & White filed pleadings for the improper purpose of prolonging the litigation and forcing Murphy to settle the claim against him.  Murphy asks that Kodak and Welts & White be

ordered, both jointly and severally, to pay him $30,000 as sanctions under Rule 11 for reasonable attorneys fees, costs and expenses incurred by him in the defense of the underlying action. Murphy also requests this court to order Kodak and Welts & White, both jointly and severally, to pay to the court $10,000 as additional sanctions pursuant to Rule 11 for their abuse of the judicial process. For the following reasons Murphy's request for Rule 11 sanctions is denied.

## I. BACKGROUND

In early 1989, defendants Karen and Ken Knight (the "Knights") sought to lease equipment and purchase supplies from Kodak for use in their new business "All In One Hour Photo." Kodak determined that the Knights were a credit risk and as a condition to extending them credit, Kodak required additional security. In an effort to obtain this additional security the Knights approached Murphy, Karen Knight's father. Subsequently, Kodak mailed Murphy a guaranty agreement and a personal financial statement form for him to complete and return to Kodak. On or about June 1, 1989 Kodak received Murphy's personal financial statement listing his assets, liabilities, sources of income and net worth. At the top of the financial statement was printed

2

"Daniel T. Murphy (Limited Partner)" and the final page of the financial statement bore Murphy's signature. During this period, Kodak agreed to extend the Knights credit provided that Murphy sign the agreement guaranteeing the Knights' debt. Shortly thereafter, Kodak received in its offices a guaranty agreement purportedly bearing Murphy's signature. The signature was neither witnessed nor notarized.

As a result, in October of 1989, Kodak and the Knights entered into a five year lease agreement under which the Knights would receive a Kodak "Create-A-Print" film developer and Kodak would receive monthly payments with a total payout of approximately $65,500. Kodak also supplied the Knights with approximately $9,500 worth of goods and services on open account. The Knights were not able to meet their payment obligations to Kodak and their accounts became seriously past due. In November 1990, with the Knights in default, Kodak accelerated the debt owed under the lease agreement and called in the amount owed on the open account, demanding payment in full of the $75,000. Neither the Knights, nor Murphy responded to the demand and no payment was made on the outstanding debt. As a result, on July 10, 1991 Kodak instituted the underlying action against the Knights and Murphy.

3

The first and second counts of the complaint filed by Welts & White sought recovery from the Knights based on their breach of the lease agreement and failure to pay for goods and services rendered. The Knights failed to answer the complaint, and on November 12, 1991, on plaintiff's motion, the clerk of court made an entry of default against the Knights pursuant to Fed. R. Civ. P. 55(a). The third count of the complaint sought recovery from Murphy as the guarantor of the Knights' debt and was based on his signature on the guaranty agreement. Kodak's and Welts & White's alleged Rule 11 violations stem from this third count.

## II. FACTS

In essence, the complaint against Murphy alleged that he executed a guaranty agreement, whereby he guaranteed payment of the Knights' debt to Kodak. The Complaint further alleged that Murphy defaulted on the guaranty agreement by failing to make payment on Kodak's demand.

In response to the complaint Murphy asserted, inter alia, that he did not sign the guaranty agreement, therefore he was not liable to Kodak for the Knights' debt.

In its pretrial conference memorandum dated January 8, 1992 Welts & White raised two alternative theories of Murphy's

4

liability: (1) Murphy's signature on the guaranty agreement was genuine (genuine signature), or (2) Murphy's authorized agent signed the guaranty agreement (agency). In his pretrial conference memorandum Murphy stated, again, that the signature was a forgery.

Subsequently, Murphy provided Welts & White with approximately 20 handwriting exemplars of Murphy's signature in order for Welts & White to have an expert analyze them and render an opinion as to whether or not the signature on the guaranty agreement was Murphy's. Shortly thereafter Welts & White informed Murphy and this court that they would not rely on expert testimony to show the genuineness of the signature, but rather would rely on other circumstantial evidence to prove the same.

As a result, on June 22, 1992 Murphy filed a Motion for Summary Judgment based on the fact that Welts & White would not present any expert testimony regarding the genuineness of Murphy's signature. Murphy contended that Welts & White could not rebut Murphy's testimony that the signature was a forgery and therefore could not meet its burden of proof. Welts & White responded to this motion on July 22, 1992 by again asserting its two alternative theories of liability, (1) genuine signature, or (2) agency. On October 27, 1992 Judge DiClerico, then presiding

5

over this case, denied Murphy's Motion for Summary Judgment based on the finding that there was a genuine issue of material fact concerning whether or not the signature on the guaranty agreement was Murphy's.

On October 13, 1992, while Murphy's Motion for Summary Judgment was still pending, Welts & White took the depositions of Ken and Karen Knight.[1] During the course of Ken Knight's deposition he stated that he had signed Murphy's name to the guaranty agreement. Karen Knight's deposition testimony corroborated this. Both Ken and Karen Knight also indicated in their depositions that Murphy knew he was financially backing "All In One Hour Photo" when he supplied Kodak with his personal financial statement. Moreover, the Knights' depositions indicate that Murphy told his daughter Karen to "do whatever it takes," using his credit, to get the "All In One Hour Photo" business set up. The Knights' depositions also indicate that Murphy was subsequently informed that Ken Knight signed Murphy's name to the guaranty agreement. Further, the Knights' depositions indicate that Murphy did not object to Ken Knight signing his name to the

---

[1] On June 1, 1992 the Knights filed for relief under Chapter 7 of the Bankruptcy Code. Welts & White filed for relief from the automatic stay in order to depose the Knights and to continue with discovery in the litigation pending in this court.

guaranty agreement when he was subsequently informed of the action.

On November 18, 1992, as a result of the Knight's deposition testimony and Murphy's contention that he had not signed the guaranty agreement, Welts & White filed an adversarial complaint in the Knight's pending Chapter 7 Bankruptcy proceeding seeking to have the Knight's debt to Kodak excepted from discharge. The basis of Kodak's Bankruptcy Complaint was that the Knights had obtained credit from Kodak through false pretenses, a false representation, or actual fraud. Welts & White further alleged that Murphy did not sign the guaranty agreement and that Ken Knight admitted in his deposition that he had forged Murphy's name on said guaranty agreement.[2]

On January 26, 1993 Murphy received the transcripts of the Knights' depositions and discovered that Ken Knight claimed that he had signed Murphy's name on the guaranty agreement. On May 11, 1993, approximately four months later, Murphy filed a second

---

[2] Subsequently, on March 5, 1993, Welts & White filed a motion for withdrawal of reference and consolidation of actions in this court, seeking to consolidate the Knights' bankruptcy proceeding with the action still pending against Murphy in this court. This court granted the consolidation noting the common questions of law and fact and the risk of contradictory decisions based on the same factual and legal issues.

motion for summary judgment based on Ken Knight's statement and Kodak's complaint in the bankruptcy proceeding alleging Ken Knight's forgery. On May 24, 1993 Welts & White responded by again alleging 1) genuine signature, or 2) agency. In addition, Welts & White alternatively claimed that Murphy ratified the guaranty agreement. When this case settled on July 29, 1993, Murphy's motion was still pending.

At the final pre-trial conference hearing on May 21, 1993 Murphy again claimed that Kodak could not successfully maintain a claim against him. Murphy based his contention on the assumption that the genuineness of his signature was no longer a disputed issue of fact and the fact that Kodak had never formally amended its complaint to include counts alleging agency and ratification. Kodak responded by claiming that it did intend to pursue the agency and ratification theories at trial. As a result, I advised Welts & White to file a motion to amend its complaint, which it did on May 28, 1993. The motion to amend the complaint contained five alternative theories of Murphy's liability: 1) genuine signature, 2) agency, 3) ratification, 4) estoppel, or 5) partnership.

On June 9, 1993 Murphy objected to Kodak's motion to amend asserting, inter alia, that his case would be prejudiced by such

8

a late amendment. On June 16, 1993, in its response to Murphy's objection, Kodak again asserted all five of its theories of Murphy's liability based on the guaranty agreement.

On July 29, 1993 at the second final pretrial conference, the case settled, with Kodak agreeing accept a dismissal of the case with prejudice. Murphy's Rule 11 motion focuses on Welts & White's and Kodak's continued assertion that Murphy's signature on the guaranty agreement was genuine. Murphy does not contend that Welts & White's alternative theories of liability violated Rule 11. As such, I focus my analysis on Kodak's claim that Murphy's signature is genuine.

## III. **DISCUSSION**

### A.    **Standard**

"The purpose of Rule 11 is to deter dilatory and abusive tactics in litigation and to streamline the litigation process by lessening frivolous claims or defenses."[3] <u>Cruz v. Savage</u>, 896 F.2d 626, 630 (1st Cir. 1990); <u>see also</u> Fed. R. Civ. P. 11,

---

[3] I have analyzed Murphy's claims under the version of Rule 11 that was in place prior to December 1, 1993. Significant changes were made in Rule 11 by the December 1, 1993 amendments and I have determined that it would be inappropriate to apply these changes retrospectively in this case. <u>See</u> Fed. R. Civ. P. 86, advisory committee notes and notes of decisions.

advisory committee notes. "Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable and 'not interposed for any improper purpose.'" Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990); see also Mariani v Doctors Assoc., Inc., 983 F.2d 5, 7 (1st Cir. 1993); Cruz, 896 F.2d at 630. In this regard, attorneys are held to the standards of due diligence and objective reasonableness. Mariani, 983 F.2d at 7; Cruz, 896 F.2d at 631; Lancellotti v. Fay, 909 F.2d 15, 20 (1st Cir. 1990). Under this standard, pleadings filed by an attorney are evaluated and judged based upon what was objectively reasonable under the circumstances that existed when the pleading was filed. Cruz, 896 F.2d at 631; Kale v. Combined Ins. Co., 861 F.2d 746, 758 (1st Cir. 1988); Navarro-Ayala v. Nunez, 968 F.2d 1421, 1425 (1st Cir. 1992); see also Fed. R. Civ. P. 11, advisory committee notes.

Rule 11 provides two grounds for sanctions: the "reasonable inquiry" clause and the "improper purpose" clause. Lancellotti, 909 F.2d at 19. Rule 11 states, in pertinent part:

> Every pleading, motion, and other paper of a
> party represented by an attorney shall be
> signed by at least one attorney of record in

10

the attorney's individual name, whose address
shall be stated ... The signature of an
attorney or party constitutes a certificate by
the signer that the signer has read the
pleading, motion, or other paper; that to the
best of the signer's knowledge, information,
and belief formed after reasonable inquiry it
is well grounded in fact and warranted by
existing law ... and that it is not interposed
for any improper purpose, such as to harass or
to cause unnecessary delay or needless increase
in the cost of litigation ...

Fed. R. Civ. P. 11. In the present case, Murphy contends that

Welts & White and Kodak violated both the "reasonable inquiry"

clause and the "improper purpose" clause of Rule 11. I will

address each contention in turn.


**B.    Reasonably Inquiry; Sanctions Against Welts & White**

The Rule 11 "reasonable inquiry" clause is itself composed

of two subdivisions. "A party or lawyer can run afoul of the

'reasonable inquiry' clause by failing either (1) to make a

reasonable inquiry into the facts, or (2) to make a reasonable

inquiry into (and informed assessment of) the law." Lancellotti,

909 F.2d at 19, n.4 (citing Ryan v. Clemente, 901 F.2d 177, 179-

81 (1st Cir. 1990) (applying both subdivisions of the "reasonable

inquiry" clause)). I now turn to the pleadings and motions which

Murphy claims were filed in violation of Rule 11.

11

1.    The Complaint and Pretrial Conference Memorandum

The complaint and pretrial conference memorandum filed by Welts & White violated neither subdivision of the "reasonable inquiry" clause.  Murphy contends that counsel for Kodak was aware at the pretrial hearing on January 9, 1992, that its complaint against him was not well grounded in fact and that there was no objectively reasonable evidentiary basis for the claim against him.  I disagree.

I judge the complaint and the pretrial conference memorandum on the basis of what was objectively reasonable when the pleadings were filed.  Cruz, 896 F.2d at 631; Kale, 861 F.2d at 758; Navarro-Ayala, 968 F.2d at 1425.  When the complaint was filed on July 10, 1991 and when the pretrial conference memorandum was filed on January 9, 1992, Welts & White was in possession of several pieces of evidence suggesting that Murphy had signed the guaranty agreement.  First, counsel had the guaranty agreement itself, which purportedly bore Murphy's signature.  The fact that Murphy denies having signed the guaranty agreement does not make his version of what occurred the "true facts" of the case, but rather it makes it a disputed issue of fact.  Second, Welts & White had Murphy's signed personal financial statement.  This statement indicated that Murphy

12

considered himself a "Limited Partner" in "All In One Hour Photo."  Moreover, the purpose of providing Kodak with the financial statement was to secure a credit line and financing for the Knights.  Third, Welts & White had Kodak's business records which allegedly memorialize conversations between Murphy and Kodak employees concerning "All In One Hour Photo" and indicate Murphy's involvement in the business.  Fourth, Welts & White had all of the unpaid invoices underlying the Knights' debt.  Based on this evidence, I conclude that Kodak's complaint and pretrial conference memorandum were well grounded in fact and that Welts & White made a reasonable inquiry into the facts underlying and supporting its claim.

Welts & White also made a reasonable inquiry into and informed assessment of the applicable law.  Generally, under guaranty law the guarantor agrees to be secondarily liable for another's debt and agrees to satisfy that debt if and when the debtor fails to repay.  It is not disputed that the Knights defaulted on both their lease agreement and open account with Kodak.  Kodak was merely attempting to collect on the guaranty of an undisputed debt.  Thus, I conclude that Welts & White made a reasonable inquiry and an informed assessment of the applicable law when it filed the complaint and at the January 9th pretrial

13

hearing.

2.    Duty to Update Pleadings

Next, Murphy asserts that after Welts & White took the Knights' depositions and discovered that Ken Knight claimed to have signed Murphy's name to the guaranty agreement, it should have withdrawn Kodak's objection to Murphy's Motion for Summary Judgment.  Murphy claims that Welts & White's failure to do so violated Rule 11.  I disagree.

Rule 11 is applicable to the "initial" signing of a pleading, motion, or other paper and the signer's conduct should be judged when the pleading, motion, or other paper is signed. Cruz, 896 F.2d at 631; Kale, 861 F.2d at 758; Navarro-Ayala, 968 F.2d at 1425; see also Fed. R. Civ. P. 11 advisory committee notes.  Moreover, Rule 11 does not require counsel to update and revise pleadings, motions, or other papers that were not subject to sanctions when filed.  Oliveri v. Thompson, 803 F.2d 1265, 1274-1275 (2nd Cir. 1986); Samuels v. Wilder, 906 F.2d 272, 275 (7th Cir. 1990); Pantry Queen Foods, Inc. v. Lifschultz Fast Freight, Inc., 809 F.2d 451, 454 (7th Cir. 1987);  Corp. of the Presiding Bishop v. Assoc. Contractors, 877 F.2d 938, 943 (11th Cir. 1989).

In the present case neither the initial objection, nor the

14

amended objection filed by Kodak's counsel was subject to Rule 11 sanctions at the time they were filed. The initial objection, as stated above, claimed that Murphy's signature on the guaranty agreement was either (a) genuine or (b) signed by Murphy's authorized agent.

In support of these two theories Welts & White set forth several pieces of evidence. First, there was evidence that Kodak mailed the personal financial statement form and the personal guaranty contract to Murphy simultaneously. Second, there was evidence that the Personal Financial Statement and the Guaranty Agreement were received back by Kodak at approximately the same time and that both documents bore Murphy's signature. Third, Murphy admitted that the information in the personal financial statement was accurate and he did not deny signing the statement. Fourth, Welts and White had Kodak's business records regarding Murphy's involvement in "All In One Hour Photo." Although Kodak's theories of genuine signature and agency were weak, they were not so patently baseless or frivolous as to amount to a violation of Rule 11.

Moreover, Kodak's Amended Objection set forth additional evidence, obtained through discovery, that supported its theories of Murphy's liability. The evidence was as follows: (a) the

15

subpoenaed business records of Nynex Information Resources, which showed that Murphy was the responsible billing party for "All In One Hour Photo" until November 7, 1991; (b) a lease agreement between Murphy and Copal Systems, Inc., apparently entered into by Murphy on behalf of "All In One Hour Photo"; and (c) a Schedule from the Knights' Chapter 7 Bankruptcy file which listed Murphy as a co-debtor. This new evidence provided additional support to Kodak's claim against Murphy. Moreover, it demonstrates Welts & White's continuing inquiry into and reassessment of the factual and legal basis for Kodak's claims.

The objection and amended objection filed by Welts & White were well grounded in fact and law at the time they were filed. The mere fact that Kodak's claim that Murphy had signed the guarantee may have been weak does not subject Welts & White to sanctions.

3.    Pleadings Filed Subsequent To The Knights' Depositions

Next, Murphy contends that, in light of Ken Knight's claim that he signed Murphy's name to the guaranty agreement, Welts & White did not have an objectively reasonable basis in fact to support its continued assertion that Murphy's signature was genuine. As such, Murphy asserts that the pleadings filed by Welts & White subsequent to the Knights' depositions, which

16

included the claim that Murphy's signature on the guaranty agreement was genuine, were filed in violation of Rule 11.

The pleadings filed by Welts & White at issue here are as follows: (a) Pretrial Conference Memorandum, filed January 29, 1993; (b) Kodak's Response to Murphy's Motion for Summary Judgment, filed May 24, 1993; (c) Kodak's Motion to Amend the Complaint, filed May 28, 1993; and (d) Kodak's Response to Murphy's Objection to Amending the Complaint, filed June 6, 1993.

The evidence Welts & White had at this time supporting its claim that Murphy's signature was genuine was as follows: (a) Kodak mailed the personal financial statement form and guaranty agreement to Murphy simultaneously and received them back, completed, at approximately the same time; (b) both the guaranty agreement and Murphy's personal financial statement bore his signature; (c) Murphy admitted that the information in the personal financial statement was accurate and did not deny signing the statement; (d) the personal financial statement indicated that Murphy was a "Limited Partner" in "All In One Hour Photo"; (e) Kodak's business records indicating Murphy's involvement in "All In One Hour Photo"; (f) the business records of Nynex Information Resources which show that Murphy was the responsible billing party for "All In One Hour Photo" until

17

November 7, 1991; (g) the lease agreement between Murphy and Copal Systems, Inc., entered into by Murphy on behalf of "All In One Hour Photo"; (h) a schedule from the Knights' Chapter 7 bankruptcy file listing Murphy as a co-debtor; (i) an authorization signed by Murphy on July 17, 1989, authorizing his bank to release his financial information to third parties.

The evidence in derogation of Kodak's claim that Murphy's signature was genuine was as follows: (a) Murphy's assertion that the signature was a forgery; (b) the Knights' depositions that indicate Ken Knight signed Murphy's name to the guaranty agreement; (c) the fact that the signature on the guaranty agreement was neither witnessed nor notarized. Although this evidence seriously weakens Kodak's claim that Murphy's signature was genuine, it does not preclude such a finding.

In considering the evidence in support of and in opposition to Kodak's claim, I find that Welts & White had an objectively reasonable basis in fact on which to maintain its assertion that Murphy's signature on the guaranty agreement was genuine. The evidence set out above could have been presented to a trier of fact in support of the claim that Murphy signed the guaranty agreement. "Sanctions should not be imposed where a 'plausible good faith argument can be made ...'". Kale, 861 F.2d at 759

18

(quoting <u>Zaldivar v. City of Los Angeles</u>, 780 F.2d 823, 833 (9th Cir. 1986)).

As a result, I find that Welts & White made a reasonable inquiry into the facts and the law before filing the pleadings in question. Moreover, even in the face of evidence to the contrary, Welts & White had an objectively reasonable basis in fact and law on which to maintain its claim that Murphy signed the guaranty agreement. As such, Welts & White did not violate Rule 11's reasonably inquiry standard.

## C.   <u>**Improper Purpose**</u>

Rule 11 provides that sanctions may be imposed where a pleading is interposed for an improper purpose, such as to harass, delay, or needlessly increase the cost of litigation. <u>See</u> <u>Bay State Towing Co. v. Barge American 21</u>, 899 F.2d 129, 132-133 (1st Cir. 1990) (upholding district courts finding that defendant interposed pleadings in hope that delay and added costs of litigation would bring about compromise); <u>Lancellotti</u>, 909 F.2d at 18-19 (Rule 11 sanctions reach pleadings that, while not devoid of all merit, were filed for some malign purpose); <u>Cruz</u>, 896 F.2d at 630 (Rule 11 imposes an obligation on attorneys to

19

ensure that a proceeding does not continue without a reasonable basis in law and fact, thus attorneys must conduct themselves in a manner bespeaking reasonable professionalism and consistent with the orderly functioning of the judicial system)(citing Figueroa-Rodriguez v. Lopez-Rivera, 878 F.2d 1488, 1491 (1st Cir. 1988)(quoting In re D.C. Sullivan Co., 843 F.2d 596, 598 (1st Cir. 1988)).  I now turn to a discussion of Murphy's allegations of improper purpose.

1.   Adversarial Complaint Filed in Bankruptcy Court

Murphy contends that the adversarial complaint filed by Welts & White in bankruptcy court was done in bad faith.  Murphy claims that Welts & White should be sanctioned for alleging in bankruptcy court that Ken Knight forged Murphy's name on the guaranty agreement, while at the same time maintaining in this court that Murphy's signature was genuine.  I disagree.

Inconsistent, alternative theories of recovery can be pursued in the same lawsuit.  Fed. R. Civ. P. 8(e)(2) provides that:

> A party may also state as many separate claims or defenses [in its pleadings] as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds.  All statements shall be made subject to the obligations set forth in Rule 11.

20

The situation is potentially quite different where inconsistent pleadings are alleged against different defendants in different courts. Such conduct runs the risk of a plaintiff obtaining a double recovery and of inconsistent judgments based on the same factual and legal issues. Nevertheless, for the following reasons I find that Welts & White did not violate Rule 11 in this case by filing an inconsistent adversarial complaint in bankruptcy court.

First, Welts & White did not initiate the action in bankruptcy court. The Knights initiated the bankruptcy proceeding when they filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Welts & White was merely intervening in the bankruptcy proceeding in an effort to preserve Kodak's claim and potential recovery.

Second, Welts & White had sufficient factual support for the forgery claim to petition the bankruptcy court to except that portion of the Knights' debt from discharge. Put simply, the factual support for the adversarial complaint was Murphy's assertion that his signature on the guaranty agreement was forged, without his authorization or consent, coupled with Ken Knight's statement that he signed Murphy's name on the guaranty agreement.

21

Third, Welts & White was not seeking separate judgments in different courts based on the same factual and legal issues. Quite the contrary is true. On March 5, 1993, Welts & White filed a motion to consolidate the Knights' bankruptcy action with the action still pending in this court against Murphy. I granted the consolidation, noting the common questions of law and fact and the risk of contradictory decisions based on the same factual and legal issues.

Fourth, the circumstances demanded that Welts & White take prompt action to protect its client. As stated above, at the time Ken Knight claimed that he signed Murphy's name to the guaranty agreement, both he and his wife were in the midst of a Chapter 7 bankruptcy proceeding. The debt the Knights owed to Kodak was likely to be discharged by the appointed trustee. That would have left Murphy as the only person from whom Kodak could seek recovery. Once Welts & White learned of Ken Knight's claim, it was were faced with the inconsistent assertions of Murphy and the Knights. On the one hand, Murphy claimed that the signature on the guaranty agreement was a forgery, signed without his knowledge or consent. On the other hand, the Knights asserted that the guaranty agreement was signed with the belief that they had the authority to do so, that Murphy knew he was financially

22

backing "All In One Hour Photo," and that Murphy was later told that Ken Knight signed his name to the guaranty agreement and Murphy did not object to that action. The disparity between Murphy's and the Knights' claims is obvious.

As a result of the inconsistent statements made by Murphy and the Knights, Welts & White was correspondingly forced into the position of asserting inconsistent pleadings in order to preserve Kodak's claim against Murphy and the Knights, either individually or jointly. By seeking to have the Knights' debt excepted from discharge in bankruptcy court, Welts & White was merely acting as an effective advocate for its client by seeking to maintain a viable cause of action and a viable means of recovery against the appropriate defendants.

Fifth, the adversarial complaint demonstrates Welts & White's reasonable inquiry into and informed assessment of the law. Generally, under bankruptcy law a debt otherwise dischargeable under Chapter 7 of the Bankruptcy Code will be excepted from discharge if the debt was obtained by false pretenses, a false representation, or actual fraud. See Bankruptcy Reform Act, 11 U.S.C. § 523(a)(2)(A) (1978). Clearly, the relief sought by Welts & White in bankruptcy court was based on an informed assessment of the applicable law and was supported

23

by the available facts.

I find that Welts & White did not violate Rule 11 by filing an inconsistent pleading in Bankruptcy Court. Welts & White's filings were well grounded in fact and law and there is no evidence that said pleading was interposed for an improper purpose.

2. Continued Pursuit of Claim

In the present action Murphy also asserts that Welts & White continued to pursue the genuineness of the signature claim when it knew or should have known that the claim was frivolous. Murphy contends that this, coupled with the fact that Kodak had the financial strength to delay and prolong the litigation, is evidence of Kodak's improper purpose. Moreover, Murphy contends that Kodak's objections to his motions for summary judgment and dismissal were interposed for the sole purpose of forestalling an early adjudication of the litigation. In support of this assertion, Murphy refers to the fact that Kodak terminated the litigation by accepting a dismissal of the case with prejudice.

As already set forth in this order, I find that the pleadings filed by Welts & White were not frivolous. Welts & White initiated the claim against Murphy after it made a reasonable inquiry into the facts and the law supporting its

24

claim.  Moreover, as Kodak's discovery uncovered additional factual support, it reevaluated its case and plead alternative theories as to Murphy's liability.  Although Kodak's claims against Murphy were weak, they did not amount to a violation of Rule 11.

In addition, Kodak's acceptance of a dismissal with prejudice, although a factor in determining the existence of an improper purpose, is not itself determinative of the issue.

> Like the imposition of costs, attorney's fees, and contempt sanctions, the imposition of a Rule 11 sanction is not a judgment on the merits of an action.  Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate.

Cooter & Gell, 496 U.S. at 396.  In reviewing the conduct of this case and the pleadings, I find no evidence that indicates that Kodak initiated or pursued its claims against Murphy for any improper purpose.  Murphy has failed set forth any argument that persuades this court otherwise.

## D.    Sanctions Against Kodak

Rule 11 sanctions may be imposed on represented parties. Business Guides, Inc. v. Chromatic Communications Enters., Inc.,

498 U.S. 533, 548 (1990); <u>Navarro-Ayala</u>, 968 F.2d at 1425. Pursuant to Rule 11, a party who signs a pleading, motion, or other paper has an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing. <u>Business Guides</u>, 498 U.S. at 551; <u>Navarro-Ayala</u>, 968 F.2d at 1425. Like an attorney, the standard by which a party will be judged is one of objective reasonableness under the circumstances that existed at the time the pleading, motion, or other paper was filed. <u>Business Guides</u>, 498 U.S. at 551; <u>Navarro-Ayala</u>, 968 F.2d at 1425.

In this case, Murphy requests this court to impose sanctions on Kodak, however, he fails to allege or direct this court to any conduct on the part of Kodak or its employees which constitutes a violation of Rule 11. The only document signed by an employee of Kodak and filed in this case, that this court is aware of, is the affidavit of Kenneth W. Miller, filed July 7, 1992 in support of Kodak's objection to Murphy's motion for summary judgment. Murphy neither contends, nor do I find, that this affidavit violated Rule 11.

Based on my review of the record and Murphy's failure to persuade this court otherwise, I find that Kodak did not engage in any conduct violative of Rule 11 and as such, is not subject

26

to sanctions.

**E.    Sanctions For Abuse of Process**

As a result of the findings set forth above, Murphy's request that Welts & White and Kodak be sanctioned for abuse of the judicial process is denied as moot.

### III. CONCLUSION

Based on the foregoing, I find the neither Welts & White, nor Kodak violated the requirements of Fed. R. Civ. P. 11. Accordingly, Defendant Daniel T. Murphy's motion for sanctions (document no. 64) is denied.

_____
Paul Barbadoro
United States District Judge

February 23, 1994

cc:  Byron L. Sainsting, Esq.
     Jack S. White, Esq.
     Marsha V. Kazarosian, Esq.