**In re 1095 COMMONWEALTH CORPORATION and Bahig F. Bishay, Debtors.**

**1095 Commonwealth Corporation and Bahig F. Bishay, Appellants,**

**v.**

**Citizens Bank of Massachusetts, Appellee/Cross–Appellant.**

**No. CIV. A. 97–10383–GAO.**

United States District Court, D. Massachusetts.

July 27, 1999.

---

### MEMORANDUM AND ORDER

O'TOOLE, District Judge.

The parties cross-appeal from two decisions of the United States Bankruptcy Court for the District of Massachusetts. The first decision, issued January 21, 1997, granted in part and denied in part a motion by creditor Citizens Bank of Massachusetts ("Citizens") for the allowance of

fees and expenses against debtors Bahig F. Bishay and 1095 Commonwealth Avenue Corp., of which Bishay was the sole shareholder (collectively "Bishay"). This first decision allowed Citizens attorneys' fees and expenses in the amount of $204,-936.07, but also determined that a portion of a fee arrangement between Citizens and its attorneys was unenforceable. The bankruptcy court further found that Citizens' failure to disclose fully the terms of its fee arrangement, coupled with other misrepresentations in its motion papers, warranted the imposition of sanctions pursuant to Rule 9011, Federal Rules of Bankruptcy Procedure. The second decision, issued August 6, 1997, established the amount of the Rule 9011 sanction.

Both parties have appealed from the first decision on several grounds, while Citizens objects to the second decision. For the reasons set forth below, with the exception of one minor mathematical error discussed at the end of this opinion, the bankruptcy court's decisions are AFFIRMED in their entirety.

## I. *Background*

In 1995, Bishay filed voluntary petitions for himself and the corporation under Chapter 11 of the United States Bankruptcy Code. At the time of the filings, Bishay owed Citizens approximately $1.6 million. Citizens held a security interest in assets, the value of which exceeded the outstanding indebtedness. After proceedings not relevant here, Citizens filed creditor plans of reorganization in both Chapter 11 cases. The bankruptcy court confirmed the Citizens' plans on April 23, 1996.

On May 23, 1996, Citizens filed a motion pursuant to § 506(b) of the Bankruptcy Code, 11 U.S.C. § 506(b), seeking unpaid interest, attorneys' fees and costs of collection from the appellants. In support of the motion, Citizens filed the affidavit of Richard M. Barry, a Citizens' Vice President responsible for the administration of

the bank's loans to Bishay. In the affidavit, Barry swore that Citizens "incurred out-of-pocket costs of collection, including attorneys' fees," in the amount of $274,-137.59, $262,419.40 of which were legal fees and expenses "incurred" by Citizens and paid to the law firm of Brown, Rudnick, Freed and Gesmer, P.C. ("Brown Rudnick"). Barry Aff. at 3, Ex. 1. Attached to the Barry affidavit were Brown Rudnick invoices detailing the attorney hours expended and applying the standard hourly billing rate for the attorney hours worked. *Id.*, Ex. 1.[1]

Bishay initially opposed the § 506(b) motion on the grounds that the requested fees were excessive and were improperly documented. However, after discovery revealed that there were two previously undisclosed and potentially applicable fee arrangements between Citizens and Brown Rudnick, Bishay filed a supplemental opposition to the § 506(b) motion, claiming that Citizens had employed a "dual billing practice" regarding the fees. Referring to the newly discovered fee agreements, Bishay asserted that Citizens had agreed to pay Brown Rudnick a "blended" rate of $195 per hour for all attorney work on the Bishay matters, regardless of the normal (and usually higher) hourly rates Brown Rudnick attorneys would otherwise charge, with an important proviso. In the event that Bishay should ultimately be responsible to Citizens for the fees, Brown Rudnick would charge Citizens the standard, generally higher hourly attorney rates. In effect, the higher fees would only be charged if Citizens was not going to pay the fees. Bishay argued to the bankruptcy court that Citizens' failure to disclose the existence of this arrangement in its § 506(b) fee motion warranted a denial of all requested fees and expenses.

The bankruptcy court conducted a preliminary hearing on the § 506(b) motion on

1. Citizens' motion itself stated that "[t]he retention agreement between Citizens and its counsel provides that Citizens will pay [Brown Rudnick's] normal hourly rate for all work performed." Citizens' 506(b) Mot. at 6.

July 10, 1996. Brown Rudnick attorney Steven J. Mastrovich, the lead attorney for an attempted pre-bankruptcy workout and the one who personally negotiated the Citizens/Brown Rudnick fee arrangements, at first testified that a blended billing arrangement did exist, but that it was not applicable to the Bishay matters. When he was confronted with evidence that tended to contradict this testimony, however, he disavowed knowledge about whether the fee arrangement applied. Following Mastrovich's testimony, the bankruptcy court determined that a full evidentiary hearing was necessary.

Just before the evidentiary hearing began, Bishay raised the argument that Citizens' and Brown Rudnick's deception warranted the imposition of sanctions under Fed. R. Bankr.P. 9011(a), and that issue also was considered by the court at the hearing. Citizens did not object that it had received insufficient notice of the motion for Rule 9011 sanctions.

Following the hearing, Chief Judge Kenner issued a comprehensive opinion in which she found that "both by what they actually stated and by what they omitted, the Citizens' [506(b) fee] motion and Barry's supporting affidavit misrepresented the underlying agreement between Citizens and [Brown Rudnick] and the extent of Citizens' liability thereunder." Op., Jan. 21, 1997, at 14. Specifically, the bankruptcy court determined that the fee arrangement was "by force of logic, unenforceable" against Bishay unless the lower blended rate of $195 per hour was utilized. *Id.* at 11. Moreover, the court found that Citizens' failure to disclose the arrangement rendered Barry's affirmative representations that it had retained Brown Rudnick at the normal rates to be "false and quite misleading." *Id.* at 13. The court concluded that, despite his assertions in his affidavit to the contrary, Barry did not have personal knowledge of the invoices, fees incurred, or governing fee agreement between the parties. Further, since Citizens did not actually incur fees in the

amount stated, and Barry did not properly check the affidavit to ensure that it contained accurate fee information, the court found that the statements pertaining to the fees incurred were made in reckless disregard for their truth.

The court also found Mastrovich's testimony "not credible." *Id.* at 21 n. 14. Chief Judge Kenner determined that Mastrovich, as the billing attorney, knew "without question" that the blended fee arrangement was applicable to the Bishay workouts, but had "deliberately concealed" its applicability from his fellow attorney, William Baldiga, and ultimately from Bishay and the court. *Id.* at 21. The bankruptcy court found Baldiga's assertions that he was unaware of the existence of the fee arrangement to be plausible, despite the fact that he had access to documents which tended to prove otherwise. Lastly, the court concluded that Citizens failed properly to "research and accurately represent to the Court" the extent of the bank's liability for attorneys' fees. *Id.* at 23–24.

As a result, the court imposed a sanction against Citizens under the authority of Bankruptcy Rule 9011 in an amount equal to the reasonable attorneys' fees and expenses that Bishay incurred in bringing to light the dual-rate agreement between Citizens and Brown Rudnick. Although the court made explicit findings that there had been misrepresentations, it concluded that a denial of all fees would be unwarranted, due in large part to what it assessed was the candid testimony of Baldiga and the "intransigence" of Bishay in the underlying debt collection litigation. *Id.* at 28–29.

In its second decision, issued August 6, 1997, the court quantified the reasonable attorneys' fees and expenses incurred, finding after full briefing and argument that the appropriate amount of the sanction should be $142,520.82, which was to be set off against the attorneys' fees calculated at the blended rate.

## II. Standard of Review

A district court reviewing a bankruptcy court's decision applies "the clearly erroneous standard to findings of fact and de novo review to conclusions of law." *In re Winthrop Old Farm Nurseries*, 50 F.3d 72, 73 (1st Cir.1995) (internal quotations omitted) (quoting *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir.1994)). "A finding of fact is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been made." *Mitchell v. United States*, 141 F.3d 8, 17 (1st Cir. 1998).

All aspects of the bankruptcy court's Rule 9011 determination are subject to an abuse of discretion standard. *See In re Coones Ranch*, 7 F.3d 740, 743 (8th Cir.1993), *relying upon Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (reviewing Rule 11 determinations); *Navarro–Ayala v. Nunez*, 968 F.2d 1421, 1425 (1st Cir.1992) (applying an abuse of discretion standard to a Rule 11 determination). For an appellate court reviewing factual findings, the abuse of discretion standard is "indistinguishable" from the clearly erroneous standard. *Cooter & Gell*, 496 U.S. at 401, 110 S.Ct. 2447. Since "the decision about whether a litigant's (or lawyer's) actions merit the imposition of sanctions is heavily dependent upon the district court's firsthand knowledge of the case and its nuances, appellate review is deferential." *Navarro–Ayala*, 968 F.2d at 1425.

## III. Analysis

### A. Bishay's Appeal: The Allowance of the § 506(b) Motion

Section 506(b) of the Bankruptcy Code [2] allows a creditor to recover attorneys' fees and costs from a debtor if: (1) the creditor has an allowed secured claim; (2) the creditor is oversecured; (3) the underlying agreement between the creditor and the debtor provides for the payment of fees and costs; and (4) the fees and costs requested are reasonable. *See, e.g., In re West Electronics, Inc.*, 158 B.R. 37, 40 (Bankr.D.N.J.1993); *In re Wire Cloth Prods.*, 130 B.R. 798, 814 (Bankr. N.D.Ill.1991). The bankruptcy court implicitly found that Citizens had satisfied these prerequisites, and allowed in part Citizens' request for fees.

Bishay first disputes the allowance of *any* fees, arguing that both bankruptcy and nonbankruptcy law require a full denial of the request. Both contentions are incorrect. With respect to bankruptcy law, Bishay points to nothing in the Bankruptcy Code that mandates the complete denial of fees in these circumstances. The bankruptcy cases Bishay cites are also unpersuasive, most of them dealing with Bankruptcy Code provisions unrelated to § 506(b). Fees and expenses may be awarded under § 506(b) so long as the moving party satisfies the statutory prerequisites. *See In re Kord Enters. II*, 139 F.3d 684, 688 (9th Cir.1998) ("An oversecured creditor need only satisfy the explicit requirements of § 506(b) to obtain attorneys' fees.").[3]

2. Section 506(b) provides: "To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." 11 U.S.C. § 506(b).

3. Most of the cases relied upon by the appellants deal with 11 U.S.C. §§ 327–30. A bankrupt estate's trustee may appoint attorneys for the purposes of legal assistance, provided that the attorneys do not hold interests adverse to those of the estate. *See* 11 U.S.C. § 327(a). Section 330 vests a bankruptcy court with the discretion to award reasonable compensation to such attorneys for the services they render. *See* 11 U.S.C. § 330(a)(1)(A). Pursuant to § 328, however, the bankruptcy court may deny all such compensation if the attorney is found to be "not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which [the attorney] is employed." 11

■ The assertion that state law requires a complete fee denial of a fee request under § 506(b) is likewise without merit. The weight of authority is that only federal law governs the enforcement of attorneys' fees provisions in connection with secured claims in bankruptcy, without regard to potentially contrary state law. *See, e.g., In re Kord Enters. II,* 139 F.3d at 688–89 (finding that an "analysis of § 506(b) and relevant case law ... confirms that § 506(b) preempts state law"); *In re Schriock Constr.,* 104 F.3d 200, 201–02 (8th Cir.1997) (concluding that "the plain language of section 506(b) expressly provides for the award of attorney's fees in bankruptcy proceedings, without reference to contrary state law"); *In re Hudson Shipbuilders,* 794 F.2d 1051, 1056 (5th Cir. 1986) (holding that "Congress intended that federal law should govern the enforcement of attorneys' fees provisions, notwithstanding contrary state law"); *Unsecured Creditors' Comm. v. Walter E. Heller & Co. Southeast,* 768 F.2d 580, 585 (4th Cir. 1985) (allowing for the enforcement of § 506(b) fee agreements notwithstanding contrary state law); *but see In re Morse Tool,* 87 B.R. 745, 748–49 (Bankr.D.Mass. 1988) (applying state law to a § 506(b) request for attorneys' fees). In any event, the record indicates that Bishay failed to raise in the bankruptcy court the only even remotely viable state law argument it raises on this appeal—willful breach of contract by Citizens.[4] "If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time

on appeal." *Teamsters, Chauffeurs, Warehousemen and Helpers Union, Local No. 59 v. Superline Transp. Co.,* 953 F.2d 17, 21 (1st Cir.1992).

■ Bishay also claims that certain allowed § 506(b) fees were not "reasonable" under federal law.[5] It is bedrock that "the amount of an award of attorneys' fees is to be determined by the [trial] court," the role of an appellate court being "to review for errors of law or abuse of discretion." *Culebras Enters. Corp. v. Rivera–Rios,* 846 F.2d 94, 102 (1st Cir.1988). The bankruptcy court, much more familiar with the facts and circumstances of the underlying fee request and dispute, extensively addressed each of the reasonableness issues currently raised by Bishay. There is no evident abuse of discretion by the bankruptcy court in its analyses or conclusions regarding the reasonableness of the awarded fees, and accordingly no basis for disturbing those findings.

### B. Citizens' Appeal—The Rule 9011 Sanction

At the time of the January 21, 1997, decision, Fed. R. Bankr.P. 9011 provided that an attorney's or party's signature on a bankruptcy court paper "constitutes a certificate that ... to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Fed. R. Bankr.P. 9011(a) (prior to 1997 amendment).[6] The rule fur-

U.S.C. § 328(c). The First Circuit has chosen not to adopt a "per se or brightline rule invariably requiring denial of all compensation under section 328(c)," instead leaving the matter of fees to the discretion of the bankruptcy court. *Rome v. Braunstein,* 19 F.3d 54, 62 (1st Cir.1994). Thus, even if the statutory sections cited by Bishay were applicable, there would be no *requirement* of a full denial of requested fees.

4. Bishay's other arguments—that agency and consumer protection laws mandate a full de-

nial of any fee—are unsupported and meritless.

5. Specifically, they argue that the bankruptcy court should have stricken *all* of Mastrovich's fees as a result of both his intentional deception and his allegedly deficient timekeeping records, and also that it should have denied an $11,175.00 appraisal fee.

6. In 1997, after the date of the proceedings below, Congress amended Rule 9011 to conform to the 1993 changes made to Fed. R.Civ.P. 11. *See* Fed. R. Bankr.P. 9011 advi-

ther provided that if any document were signed and submitted in violation of the rule, "the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee." *Id.*

### 1. The Appropriateness of the Rule 9011 Sanction

Chief Judge Kenner focused on two persons who had signed papers submitted to the court: Barry, who signed his affidavit as a "representative of Citizens," and Brown Rudnick attorney Kelly McEnaney, who signed the § 506(b) fee motion. Op., Jan. 21, 1997, at 27. Having found that both documents misrepresented the terms of the Citizens/Brown Rudnick fee agreement, and further that Barry had misrepresented "the extent of his knowledge of the agreement and of the fees incurred," Chief Judge Kenner concluded that "both documents were signed and filed in violation of the rule," requiring the imposition of an appropriate sanction. *Id.*

■ Citizens' first objection is it was denied due process by the manner in which the bankruptcy court entertained the sanction issue because Citizens had not received "fair notice" of the motion and a "reasonable opportunity to contest and explain" the alleged Rule 9011 violations. Citizens learned that Bishay intended to seek sanctions on October 23, 1996, the day before the bankruptcy court's evidentiary hearing began. The evidentiary hearing concluded on October 29, 1996. Citizens did not make any objection at the time that it had been given inadequate notice or an inadequate opportunity to present its side of the issue. These objections were made only after Bishay prevailed on the motion. The objection will

not be entertained for the first time on appeal. *See Anderson v. Beatrice Foods Co.,* 900 F.2d 388, 397 (1st Cir.1990) (rejecting a Rule 11 due process argument for a party's failure to raise it below); *Superline Transp. Co.,* 953 F.2d at 21.

■ Moreover, even if timely objection had been made, Citizens was not denied due process. The requirements of due process in this context require "[a]t bottom, ... notice and some opportunity to respond." *Simmerman v. Corino,* 27 F.3d 58, 64 (3d Cir.1994). "The precise form of procedural protection required will, of course, vary with the circumstances of the case." *Id.* Here, Citizens knew well in advance of the hearing that the primary issue under consideration was its alleged improper conduct in its fee motion submission. Even though it may have learned only shortly before the hearing that Bishay sought sanctions, Citizens had ample notice of the issues that formed the basis for the request. The bankruptcy court conducted a two-day evidentiary hearing that allowed Citizens more than ample opportunity to contest not only the basis for the sanction, but also the appropriateness of the court's imposing one.

■ Citizens next argues that a sanction is not called for under Rule 9011 unless the signed submissions at issue were found to be "devoid of any factual foundation." Citizens' Br., May 12, 1997, at 25. It is not clear what Citizens means by this. If by "devoid of any factual foundation" it means only that for a submission to be sanctionable, the court must find that it contained statements that were factually false, the argument is both unexceptionable and irrelevant. The bankruptcy court found that the submissions contained false statements of fact, and its findings were, on the record, not clearly erroneous. As a matter of fact, they were rather clearly correct. If, on the other hand, Citizens

sory committee's notes. The current Rule 9011 is therefore virtually identical to the

current Rule 11.

means to argue that a little falsity is not enough and that to warrant sanctions the falsehood must be thoroughgoing, the argument is preposterous. A primary purpose of the Barry affidavit was to inform the bankruptcy court about the fees Citizens had incurred in working out the Bishay loans. The bankruptcy court determined that Barry had not given it accurate information. It found that he made his statements in reckless disregard for their truth, and that he had intentionally misrepresented his knowledge of the applicable fee invoices. The court further found that the intentional nondisclosure of the fee agreement was the equivalent of fraud.[7] On these factual findings, the bankruptcy court was amply justified in concluding that sanctions were appropriate under Rule 9011. *See Cooter & Gell,* 496 U.S. at 393, 110 S.Ct. 2447.[8]

Citizens also contends, unpersuasively, that the factual findings of the bankruptcy court were clearly erroneous. There is more than enough evidence in the record to support the factual conclusions, especially as they pertain to Barry and Mastrovich. This Court is not left with a "firm conviction that a mistake has been made," *see Mitchell,* 141 F.3d at 17, but rather quite the contrary. Chief Judge Kenner had the opportunity to observe firsthand the courtroom testimony and demeanor of the witnesses. She was closely familiar with the facts and issues of the case. Appropriate deference to her perceptions combined with a review of the appellate record leaves this Court satisfied that her findings cannot be held to have been clearly erroneous. No sufficient reason exists to overturn the bankruptcy court's decision

to impose a sanction on Citizens pursuant to Rule 9011.

### 2. The Choice of Sanction

A sanction imposed under Rule 9011 must be "appropriate." Fed. R. Bankr.P. 9011(a). In reviewing the appropriateness of a sanction, an appellate court should "defer, within broad limits, to the [lower] court's exercise of its informed discretion," yet still "be careful not merely to rubber stamp" the decision below. *Navarro–Ayala,* 968 F.2d at 1426 (internal quotations omitted) (quoting *Velazquez–Rivera v. Sea–Land Service, Inc.,* 920 F.2d 1072, 1075 (1st Cir.1990)). "So long as the sanction selected is 'appropriate,' [the rules] place virtually no limits on judicial creativity." *Anderson v. Beatrice Foods Co.,* 900 F.2d 388, 394 (1st Cir.1990).

As with sanctions under Fed. R.Civ.P. 11, Rule 9011 sanctions "serve dual purposes of deterrence and compensation." *See Anderson,* 900 F.2d at 394; *see also Navarro–Ayala,* 968 F.2d at 1426 ("The imposition of a Rule 11 sanction usually serves two main purposes: deterrence and compensation."). With respect to the goal of compensation, the First Circuit has stated:

> [The sanction] ... should not compensate the opposing party, or even a court-appointed master, for any and all costs and expenses incurred in response to the sanctionable conduct. Rather, compensation, as such, *should be awarded only for the fair value of response costs reasonably incurred.*
>
> *Navarro–Ayala,* 968 F.2d at 1427 (emphasis added).

Thus, "reasonable" costs incurred as a result of the sanctionable conduct may ap-

---

7. Chief Judge Kenner described Citizens' efforts as "an attempt to couch in legitimacy what is in essence the illegitimate practice of billing the borrower for more than the lender is liable. Where this is done without disclosure of the underlying agreement, and the nondisclosure is intentional, I cannot distinguish it from fraud." Op., Jan. 21, 1997, at 14.

8. Citizens' challenges pertaining to other alleged legal errors are likewise unavailing. It is true that the bankruptcy court took into account the conduct of persons who did not themselves sign any filed papers, but if that was an error it was harmless. The court's findings regarding Barry's affidavit are more than sufficient to support the imposition of Rule 9011 sanctions against Citizens.

propriately form the basis of a Rule 9011 sanction.[9]

Here, the bankruptcy court imposed a sanction of $142,520.82, an amount equal to the attorneys' fees and expenses Bishay incurred in opposing Citizens' § 506(b) fee motion. Op., Aug. 6, 1997, at 13. Chief Judge Kenner concluded that the "misrepresentations, the nature of the underlying agreement, and the preliminary evidence on the matter created an appearance of wrongdoing that fully justified [appellant's] discovery efforts and the hearing on this complex of issues." 204 B.R. 284, 300 (1997). She expressly considered Citizens' specific, detailed challenges[10] to the attorney hours expended, concluding that Bishay's voluntary reduction of its request to meet those objections was more than adequate to adjust for any overstatement in the original amount claimed. In ascertaining what was "reasonable," Judge Kenner looked to the time spent on the services, whether the services, when rendered, were beneficial towards the completion of the case, whether the time spent was commensurate with the importance of the task, and whether the services were reasonably likely to benefit the estate. Application of these guidelines led her to conclude that "the fees requested [were] neither excessive nor unnecessary," and that Bishay's "strategy and efforts were proportional to the importance and difficulty of this matter." Op., Aug. 6, 1997, at 13. In light of this detailed analysis and the deference due to the bankruptcy court's factual determinations, this Court cannot say that the sanction imposed was an abuse of discretion.

A few of minor points remain. Citizens objects that the bankruptcy court looked to 11 U.S.C. § 330 to aid in determining what amount could be considered reasonable for attorneys' fees. Section 330 lists factors to be used in determining the reasonableness of fees in a different context.[11] Thus, while the bankruptcy court was not required to apply the factors enumerated in § 330, it was not an abuse of discretion to utilize those guidelines in determining the reasonableness of the sanctions in this context.

Citizens also argues that the bankruptcy court failed to consider whether Bishay properly mitigated the fees it had to pay to contest the § 506(b) motion. However, the August 6, 1997, decision setting the amount of the sanctions explicitly addressed the appropriateness of the legal work undertaken and found the legal efforts to be necessary and not excessive. Further, as Bishay has correctly pointed out, any obligation to mitigate the amount of the fees would not require Bishay to overlook or minimize Citizens' fraudulent conduct. Simply because Bishay vigorously contested what Citizens claimed does not mean that Bishay's incurrence of fees was excessive. Bishay was fully justified in its efforts to expose and challenge Citizens' deception. This Court sees no abuse

---

9. This conclusion derives directly from Rule 9011 itself, which states that an appropriate sanction "may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee." Fed. R. Bankr.P. 9011(a) (prior to 1997 amendment); *see also Silva v. Witschen,* 19 F.3d 725, 731 n. 11 (1st Cir. 1994) (finding the argument that attorneys' fees are not allowable under Rule 11 to be in direct contradiction with the rule). It also dispenses with Citizens' least severe sanction and fee-shifting arguments.

10. Such challenges included assertions of "lumping," duplication of efforts, double billing for intraoffice conferences, and charging for noncompensable tasks.

11. As mentioned, § 330 vests a bankruptcy court with discretion to provide "reasonable compensation" to attorneys appointed by a trustee on behalf of a bankrupt's estate. *See* 11 U.S.C. § 330(a)(1)(A); *see also supra* note 3. Section 330(a)(3) lists factors that the bankruptcy judge is to look to in ascertaining the reasonableness of the compensation. After Judge Kenner determined that the appropriate sanction would be to order Citizens to pay a portion Bishay's attorneys' fees incurred in litigating the § 506(b) motion, she used these factors to ensure the "reasonableness" of the fees requested.

of discretion in the bankruptcy court's analyses.[12]

There remains one final matter to resolve. Citizens points out a mathematical error that the bankruptcy court apparently made in calculating the proper value of the services provided by Brown Rudnick for Citizens. Bishay disputes neither the fact nor the amount of the computational error. Accordingly, $5,612.50 will be added to the amount allowed to Citizens for attorneys' fees and expenses, bringing the total allowed to $210,548.57. The amount of the sanction imposed, $142,520.82, will be subtracted from that amount. In all other respects, the decisions of the bankruptcy court are AFFIRMED.

It is SO ORDERED.

**12.** Citizens also argues that the bankruptcy court erroneously justified the Rule 9011 sanction on Bishay's pursuit of "punitive damages." Citizens misapprehends what the court did. Bishay argued that the gravity of Citizens' misrepresentations warranted a full denial of the § 506(b) motion as an appropriate sanction. The court rejected that argument but also reckoned that, in order to appreciate the "reasonableness" of the fees sought by Bishay as a sanction, it would be appropriate to factor in not only the actual benefit produced, but also what further relief—not ultimately granted—that Bishay was justified in pursuing. This judgment was not an abuse of discretion.