Daryl WITHROW, Debtor.

Francis Lafayette, Appellant,

v.

Joseph B. Collins, Chapter 7 Trustee, and Phoebe Morse, United States Trustee, Appellees.

BAP No. MW 08–055.
Bankruptcy No. 07–41243–HJB.

United States Bankruptcy Appellate Panel of the First Circuit.

May 26, 2009.

Francis Lafayette, pro se, on brief for Appellant.

Joseph B. Collins, on brief for Appellee, Joseph B. Collins, Chapter 7 Trustee.

Ramona D. Elliot, and P. Matthew Sutko, on brief for Appellee, Phoebe Morse, United States Trustee.

Before VAUGHN, KORNREICH, and TESTER, United States Bankruptcy Appellate Panel Judges.

TESTER, U.S. Bankruptcy Appellate Panel Judge.

Francis Lafayette ("Attorney Lafayette") appeals from the bankruptcy court's order (the "Sanctions Order") imposing monetary sanctions against him for violating Bankruptcy Rule 9011 and §§ 707(b)(4)(C) and (D).[1] Attorney Lafayette argues that the alleged errors in the Debtor's bankruptcy schedules, statement of financial affairs, and other documents were due to the Debtor's "memory failure" rather than his own actions (or inactions), and, therefore, he did not violate Bankruptcy Rule 9011. For the reasons set forth below, we **AFFIRM.**

### BACKGROUND

Attorney Lafayette filed a skeleton chapter 13 petition on behalf of the debtor, Daryl Withrow (the "Debtor"). Less than two weeks later, the Debtor converted his case to chapter 7. Thereafter, he filed the Debtor's schedules, statement of financial affairs, and Official Form B 22A. He also filed the Debtor's Rebuttal of Presumption of Abuse (the "Rebuttal"), wherein the Debtor sought to counteract the presumption of abuse otherwise suggested by the calculations on Form B 22A and preserve his discharge due to "special circumstances." Specifically, the Debtor noted that his average monthly income of $5,333.33 (as set forth on Form B 22A) was based on overtime that he no longer re-

ceived, and that his actual average monthly income was $4,000.00. In addition, the Debtor claimed that he now needed to provide monthly support of $100 to his mother due to a stroke she suffered after the filing of the Debtor's Chapter 13 case.

The chapter 7 trustee (the "Trustee") filed a response to the Rebuttal (the "Rebuttal Response"), asserting that the Rebuttal was "false and misleading" for several reasons. First, the Trustee noted that the Debtor's Form B 22A did not list average monthly income of $5,333.33; rather, the average monthly income actually reported was $4,834.22. Second, recent pay stubs for postpetition work revealed that the Debtor was still receiving overtime pay. Third, the Trustee claimed that the Debtor's mother suffered a stroke *prior* to and not *after* the filing of his case.

Thereafter, Attorney Lafayette filed an interim application for compensation (the "Fee Application"), requesting professional fees of $1,195.00.[2] The Trustee objected. After repeating the concerns set forth in his Rebuttal Response, the Trustee asserted that because the Debtor testified at the § 341 meeting that he had "fully and truthfully" informed Attorney Lafayette of the facts and circumstances related to the schedules, statement of financial affairs, and the Rebuttal, the Trustee concluded that any errors were Attorney Lafayette's fault, and, therefore, the compensation should be denied. The U.S. Trustee also objected to Attorney Lafayette's Fee Application, adopting the reasons proffered by the Trustee.

---

1. Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. No. 109–8, 119 Stat. 23, 11 U.S.C. §§ 101, *et seq.* All references to "Bankruptcy Rule" shall be

to the Federal Rules of Bankruptcy Procedure.

2. Attorney Lafayette is required to file fee applications in all cases in the District of Massachusetts in which he represents debtors. *See In re LaFrance,* 311 B.R. 1, 25 (Bankr.D.Mass.2004).

The Debtor filed an affidavit seeking to clarify the discrepancies raised by the Trustee in his objection to the Fee Application. Among other things, the Debtor stated that his failure to list all of his bank accounts on his schedules and statement of financial affairs was due to his own forgetfulness. He also restated his commitment to provide financial support to his mother.

At a hearing on the Fee Application, the Trustee and Attorney Lafayette proposed a "settlement" in which Attorney Lafayette would pay the Trustee $1,000.00 to compensate him for time and expenses incurred due to Attorney Lafayette's errors in this case. The U.S. Trustee did not object to the proposed settlement. The bankruptcy court did not approve the settlement, however, suggesting that a Bankruptcy Rule 9011 sanction might be more appropriate. Attorney Lafayette objected to the imposition of a sanction and requested an evidentiary hearing on the matter. The bankruptcy court then entered a show cause order ("Show Cause Order") to provide Attorney Lafayette with the evidentiary hearing he requested.

In the meantime, the Trustee filed an affidavit citing additional concerns with the Debtor's schedules and statement of financial affairs. Among other things, he noted that the Debtor's schedules failed to exempt the equity in either the Debtor's residence or his automobile, and that although Attorney Lafayette promised at the § 341 meeting to amend the schedules, he had not done so. In addition, the Trustee restated his concerns about the discrepancies between the Debtor's schedules, statement of financial affairs and his testimony at the § 341 meeting regarding his mother, his income and his overtime pay.

In a responsive affidavit ("Response Affidavit"), the Debtor claimed, among other things, that his schedules had been amended to accurately reflect the true value of his residence and vehicle.[3] He also continued to deny that he received overtime pay, and stated, for the first time, that certain medication caused him to make mistakes when answering questions.

Three days later, the bankruptcy court held an evidentiary hearing as set forth in the Show Cause Order. At the hearing, Attorney Lafayette admitted that the schedules were erroneous because they did not include an exemption for the Debtor's residence or his vehicle, that he told the Trustee at the § 341 meeting that he intended to amend the schedules, and that he helped the Debtor prepare his Response Affidavit which stated that the amended schedules had been filed when, in fact, they were not filed until *after* the filing of the Debtor's Response Affidavit. Attorney Lafayette also testified that the omission of open or recently closed bank accounts on the schedules and statement of financial affairs was due to the Debtor's forgetfulness, which he claims was justified because the accounts had minimal balances.

When questioned about discrepancies between the Debtor's Rebuttal and his actual Form B 22A regarding the Debtor's average current monthly income, Attorney Lafayette admitted that he had made a mistake, but was unable to explain why or elaborate further. In addition, when questioned about discrepancies between the Debtor's Schedule J, which provided that the Debtor had no reason to anticipate a reduction in income, and his Rebuttal, which provided that the Debtor would

---

**3.** In fact, the Debtor had not yet filed his amended schedules and would not do so for two more days.

have less income due to support provided to his mother, Attorney Lafayette testified that the omission was due to the fact that the Debtor did not provide monetary support to his mother at the start of the case. This testimony, however, was inconsistent with the Debtor's affidavit wherein he stated that he began providing support to his mother months before filing his case.

On July 3, 2008, the bankruptcy court issued a Memorandum of Decision concluding that Attorney Lafayette had violated § 707(b)(4)(C) and Bankruptcy Rule 9011 in his preparation of the Debtor's schedules, statement of financial affairs and the Rebuttal.[4] The bankruptcy court stated:

> On the facts here, this Court can not find that Attorney Lafayette has met his Rule 9011 and § 707(b)(4)(C) obligations. After all of the argument and testimony, the Court still is not sure what the Debtor earned in the six months prior to the filing of the petition or what the Debtor earns now. Nor is the Court sure whether the Debtor intended to mislead the Court with respect to the information provided in his bankruptcy papers or his Section 341 meeting testimony. But the Court is sure of this-that Attorney Lafayette, at the very least, failed to (1) properly review information provided by the Debtor with respect to his prepetition income; (2) identify contradictions and inconsistencies in the schedules, Statement of Financial Affairs, Rebuttal and affidavits submitted on behalf of the Debtor before the filing of those documents; (3) promptly correct those contradic-

tions and inconsistencies, even when identified by the Chapter 7 Trustee, on anything close to a timely basis; and (4) to place himself in a position of being able to explain the reasons for those contradictions and inconsistencies to the Court even in the context of an evidentiary hearing of which he had more than adequate notice. Certainly, there is no bright line that surrounds § 707(b)(4)(C) and (D) and Rule 9011. But wherever that line lies, this Court agrees with the Chapter 7 Trustee and the UST that Attorney Lafayette has crossed it.

*Withrow*, 391 B.R. at 229. Based on these findings, the bankruptcy court entered the Sanctions Order directing Attorney Lafayette to pay the Trustee the sum of $3,585.00 as sanctions. This appeal followed.[5] Although Attorney Lafayette sought a stay pending appeal of the Sanctions Order, his request was denied.

### *JURISDICTION*

Before addressing the merits of an appeal, the Panel must determine that it has jurisdiction, even if the issue is not raised by the litigants. *See Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.)*, 226 B.R. 724 (1st Cir. BAP 1998). The Panel has jurisdiction to hear appeals from: (1) final judgments, orders and decrees; or (2) with leave of court, from certain interlocutory orders. 28 U.S.C. § 158(a); *Fleet Data Processing Corp. v. Branch (In re Bank of New Eng. Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). A decision is considered final if it "ends the litigation on the merits and leaves nothing for the court

---

**4.** The bankruptcy court's Memorandum of Decision is published. *See In re Withrow*, 391 B.R. 217 (Bankr.D.Mass.2008).

**5.** On July 14, 2008, Attorney Lafayette filed a "Notice of Appeal to the District Court." App. at 44. However, he failed to file a

separate statement of election to appeal to the district court, as required by Fed. R. Bankr.P. 8001(e) and 28 U.S.C. § 158(c)(1). Consequently, the Panel denied the transfer of the appeal to the district court.

to do but execute the judgment," *id.* at 646 (citations omitted), whereas an interlocutory order "only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits." *Id.* (quoting *In re American Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)). A bankruptcy court's order imposing sanctions under Bankruptcy Rule 9011 is a final, appealable order where, as here, it resolves all of the issues pertaining to a discrete claim. *See White v. Burdick (In re CK Liquidation Corp.)*, 321 B.R. 355, 361 (1st Cir. BAP 2005) (citing 10 Lawrence P. King, *Collier on Bankruptcy*, ¶ 9011.10 (15th ed. rev.2004)); *see also Tringali v. Hathaway Machinery Co., Inc.*, 796 F.2d 553, 558 (1st Cir.1986); *Caterpillar Fin. Servs. Corp. v. Braunstein (In re Henriquez)*, 261 B.R. 67, 70 (1st Cir. BAP 2001).

### STANDARD OF REVIEW

The Panel generally reviews findings of fact for clear error and conclusions of law *de novo*. *See TI Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F.3d 714, 719 n. 8 (1st Cir.1994). The Panel reviews the bankruptcy court's decision to impose sanctions under Bankruptcy Rule 9011 for manifest abuse of discretion. *See CK Liquidation*, 321 B.R. at 361 (citations omitted). An abuse of

discretion occurs when the court ignores a material factor deserving significant weight, relies upon an improper factor, or makes a serious mistake in weighing proper factors. *See id.* (citing *Colon v. Rivera (In re Colon)*, 265 B.R. 639 (1st Cir. BAP 2001)).

### DISCUSSION

**I. Violations of Bankruptcy Rule 9011 and § 707(b)(4)**

Pursuant to Bankruptcy Rule 9011(b), an attorney or *pro se* party who presents a document (whether by signing, filing, submitting, or later advocating) certifies, among other things, that "the allegations and other factual contentions have evidentiary support, or if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Bankr.P. 9011(b).[6] In addition, under new §§ 707(b)(4)(C) and (D) (as revised by BAPCPA), a debtor's attorney has a duty, equivalent to that under Bankruptcy Rule 9011, to perform a reasonable investigation into the circumstances giving rise to the documents before filing them in a chapter 7 case.[7] For example, under new § 707(b)(4)(C), attorneys are subject to an automatic certification of meritoriousness, based upon a reasonable investigation, as to any "petition, pleading, or written motion" signed by them. *See* 11 U.S.C. § 707(b)(4)(C).[8] Furthermore, under new

6. Rule 9011(b) is not limited to statements below which appear an attorney's signature. Rather, the rule provides that filing, submitting or even advocating with respect to a document filed with a court has the same effect as signing the document. Therefore, it is well established that Bankruptcy Rule 9011(b) applies to debtors' attorneys even with respect to a debtor's schedules, statement of affairs and other documents disclosing assets, which debtors, but not counsel, are

required to sign. *See, e.g., In re M.A.S. Realty Corp.*, 326 B.R. 31, 38 (Bankr.D.Mass.2005).

7. Although this case was commenced under chapter 13, the schedules, statements and Form B 22A were completed after the conversion to chapter 7. Thus the provisions of chapter 7, including section 707, are applicable. *See* 11 U.S.C. § 103(b).

8. Section 707(b)(4)(C) provides, in relevant part:

§ 707(b)(4)(D), an attorney's signature on a client's bankruptcy petition is deemed a representation that "the attorney has no knowledge after an inquiry that the information in the schedules filed with such petition is incorrect." *See* 11 U.S.C. § 707(b)(4)(D).[9] One court, though critical of the wording of § 707(b)(4), stated that the legislature made its point explicitly:

> [T]heir general drift is clear: debtors' counsel are to exercise significant care as to the completeness and accuracy of *all* recitations on their clients schedules, after they have made a factual investigation and legal evaluation that conforms to the standards applicable to any attorney filing a pleading, motion, or other document in a federal court. The content of a debtor's petition and schedules is relied on, and should have the quality to merit that reliance.

*In re Robertson*, 370 B.R. 804, 809 n. 8 (Bankr.D.Minn.2007).

 Accordingly, any attorney who files schedules and statements on a debtor's behalf makes a certification regarding the representations contained therein. Although the certification is not an absolute guaranty of accuracy, it must be based upon the attorney's best knowledge, information and belief, "formed after an inquiry reasonable under the circumstances." *Nosek v. Ameriquest Mortg. Co. (In re Nosek)*, 386 B.R. 374, 381 (Bankr.D.Mass. 2008). The First Circuit has held that the standard to be applied is "an objective standard of reasonableness under the circumstances." *Id.* (quoting *Cruz v. Savage*, 896 F.2d 626, 631 (1st Cir.1990)). "Courts, therefore, must inquiry as to whether 'a reasonable attorney in like circumstances could believe his actions to be factually and legally justified.'" *Id.* (quoting *Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir.1987)).

 Thus, Attorney Lafayette had an affirmative duty to conduct a reasonable inquiry into the facts set forth in the Debtor's schedules, statement of financial affairs and Rebuttal before filing them. There is evidence in the record, however, that Attorney Lafayette violated that obligation. It is undisputed that there were numerous errors and discrepancies in the documents filed by Attorney Lafayette on the Debtor's behalf. In fact, Attorney Lafayette admitted as much at the show cause hearing. For example, he conceded error regarding the inconsistent treatment of current monthly income on the Debtor's Rebuttal (which reflected that the Debtor's average current monthly income as set forth on Form B 22A was $5,333.33), and the Debtor's actual Form B 22A (which reflected $4,834.22 in current monthly income). In addition, there were discrepancies between the Debtor's Rebuttal (which listed actual monthly income without overtime pay in the amount of $4,000) and the Debtor's Schedule I (which listed actual monthly income without overtime pay in

---

The signature of an attorney on a petition, pleading, or written motion shall constitute a certification that the attorney has—
(i) performed a reasonable investigation into the circumstances that gave rise to the petition, pleading, or written motion; and
(ii) determined that the petition, pleading, or written motion—
(I) is well grounded in fact; and
(II) is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law and does not constitute an abuse under paragraph (1).
11 U.S.C. § 707(b)(4)(C).

**9.** Section 707(b)(4)(D) provides:

> The signature of an attorney on the petition shall constitute a certification that the attorney has no knowledge after an inquiry that the information in the schedules filed with such petition is incorrect.

11 U.S.C. § 707(b)(4)(D).

# 13

the amount of $3,309.73). There were also differences between the Debtor's Rebuttal (wherein he indicated that he anticipated that he would have to assist his mother financially for an indefinite period of time after the filing of his case) and his Schedule J (wherein he stated that he did not reasonably anticipate a significant increase or decrease in expenses in the upcoming year). There were also inconsistencies regarding whether the Debtor was actually receiving overtime and the frequency and extent of financial support being provided to his mother.

Although Attorney Lafayette conceded that there were numerous mistakes in the documents he filed on the Debtor's behalf, he blames the errors on his personal health issues and/or his client's faulty memory. He claims that the inconsistencies in the documents were not attributable to him, but were the fault of his client, stating: "The debtor got in the way of the process of the preparation of the documents with his mental condition" and his "personal forgetfulness." Attorney Lafayette's excuses are not persuasive and fail to justify why the mistakes were made and why they were not corrected in a timely fashion. Even if his excuses that the Debtor provided him with inaccurate information are true, they do not explain the numerous inconsistent statements in the various documents regarding the Debtor's income, entitlement to overpay and his support obligations to his mother. They are not sufficient to overcome the sloppy and careless actions (or inactions) of Attorney Lafayette in this case. Therefore, the evidence shows that Attorney Lafayette failed to conduct a reasonable investigation into the underlying facts before filing the Debtor's schedules, statement of financial affairs and Rebuttal, and that he was careless when preparing the documents. In addition, Attorney Lafayette fails to recognize that he had a duty to conduct a rea-

sonable inquiry into the underlying facts before filing the documents, and that if he had done so, many, if not all, of the inconsistencies could have been prevented.

Based on the foregoing, the Panel concludes that there is sufficient evidence in the record to support the bankruptcy court's conclusion that Attorney Lafayette violated his § 707(b)(4) and Bankruptcy Rule 9011 obligations. .

## II. Imposition of Sanctions Under Bankruptcy Rule 9011 and § 707(b)(4)

■ Pursuant to Bankruptcy Rule 9011(c), if, after notice and an opportunity to respond, the bankruptcy court determines that an attorney has violated Bankruptcy Rule 9011(b), it may impose "an appropriate sanction." *See* Fed. R. Bankr.P. 9011(c). In addition, § 707(b)(4) provides authority for bankruptcy courts to order the attorney for the debtor to reimburse the trustee for reasonable costs in prosecuting a § 707(b) motion brought by the trustee if the court grants the motion and "finds that the action of the attorney for the debtor in filing a case under this chapter violated [Bankruptcy R]ule 9011." 11 U.S.C. § 707(b)(4)(A). As the *Robertson* court noted:

> Though this new verbiage [of § 707(b)] has no directly-associated enforcement mechanism, § 707(b) now contains a basis in statute for the bankruptcy court to impose sanctions. These can take the form of "all reasonable costs" incurred by a successful movant under § 707(b), where "the action of the attorney for the debtor in filing a case under [the Bankruptcy Code] violated rule 9011 of the Federal Rules of Bankruptcy Procedure." 11 U.S.C. § 707(b)(4)(A)(i)-(ii). It also provides for "the assessment of an appropriate civil penalty against the

attorney for the debtor," § 707(b)(4)(B)(i), payable to the trustee or the UST, § 707(b)(4)(B)(ii), if "the attorney for the debtor violated rule 9011 of the Federal Rules of Bankruptcy Procedure," 11 U.S.C. § 707(b)(4) (prefatory language).

*Robertson,* 370 B.R. at 809 n. 8.

 The bankruptcy court has discretion to determine what sanctions are appropriate under the circumstances when there has been a violation of Bankruptcy Rule 9011. *In re Thomson,* 329 B.R. 359, 362 (Bankr.D.Mass.2005). The bankruptcy court usually considers several factors in determining whether to impose a sanction and what type of sanction to impose, including:

> whether the conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law, what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; and what amount is needed to deter similar activity by other litigants.

*Id.* (citing *CK Liquidation,* 321 B.R. at 362). This is not an exhaustive list of the factors that the bankruptcy court may consider. *Id.*

 Sanctions are meant to serve the dual purposes of deterrence and compensation under Bankruptcy Rule 9011, and must be designed to satisfy both purposes. *Id.* (citing *1095 Commonwealth Corp. v. Citizens Bank of Mass. (In re*

*1095 Commonwealth Corp.),* 236 B.R. 530, 538 (D.Mass.1999)). In cases of deterrence, the court must limit the sanction "to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." *Id.* (citing Fed. R. Bankr.P. 9011(c)(2)). In cases of compensation, the reasonable costs incurred as a result of the sanctionable conduct may appropriately form the sanction. *Id.* (citations omitted).

In reaching its decision to impose sanctions, the bankruptcy court noted that Attorney Lafayette has a history of "sloppy, careless and unprofessional" practices in representing consumer debtors. *Withrow,* 391 B.R. at 229 (citing *In re LaFrance,* 311 B.R. 1, 25 (Bankr.D.Mass.2004)). In *LaFrance,* the bankruptcy court disallowed Attorney Lafayette's fee application and ordered him to disgorge those fees. The court further ordered that in all future cases in which he represented consumer debtors, Attorney Lafayette was required to deposit all client compensation in his client trust account and not withdraw funds unless the court allowed his fee application. 311 B.R. at 25. However, despite the strict mandate of the *LaFrance* decision, many fee applications of Attorney Lafayette have been denied because he continued to provide poor quality services to his clients. *See, e.g., In re LaClair,* 360 B.R. 388 (Bankr.D.Mass.2006). As a result, the bankruptcy court concluded that the sanctions imposed by *LaFrance* were not sufficient to meet the bankruptcy court's intended goal of deterring Attorney Lafayette's sloppy and careless representation of his clients. Therefore, the bankruptcy court imposed sanctions against Attorney Lafayette in the amount of $3,585, representing three times the amount which he intended to charge his client.

Attorney Lafayette does not argue that the sanction amount is inappropriate.

Rather, he argues that the bankruptcy court should not have imposed sanctions at all. However, the evidence supports the bankruptcy court's conclusion that Attorney Lafayette violated Bankruptcy Rule 9011 and § 707(b)(4)(C) and, therefore, sanctions were warranted. The sanctions amount imposed by the bankruptcy court appears to be appropriate as it is designed to satisfy both purposes of deterrence and compensation. Moreover, there is no evidence that in imposing the $3,585 sanction, the bankruptcy court ignored a material factor deserving significant weight, relied upon an improper factor, or made a serious mistake in weighing proper factors. *See CK Liquidation,* 321 B.R. at 366 (citing *Colon,* 265 B.R. at 639).

Under the circumstances, there is no evidence that the bankruptcy court abused its discretion in ordering sanctions against Attorney Lafayette in the amount of $3,585.

## CONCLUSION

For the reasons set forth above, the Sanctions Order is **AFFIRMED.**